## ADAMS *v.* STATE.

### Opinion delivered October 15, 1923.

1. CRIMINAL LAW—INSTRUCTION—UNDUE PROMINENCE OF PARTICU-
LAR MATTERS.—A request for instruction in a murder case which
singled out and gave undue prominence to the testimony of
defendant to the effect that he armed himself solely for his own
protection was properly refused.

2. HOMICIDE—SELF-DEFENSE—INSTRUCTIONS.—Where it was the
State's theory that the defendant had armed himself with a
rifle for the purpose of killing deceased, an instruction present-
ing defendant's theory that he went to the place where deceased
was working to remonstrate with him, and that he carried his
rifle with him for self-protection, and shot deceased in self-defense,
*held* sufficient.

3. HOMICIDE—INSTRUCTION AS TO DEGREE.—Where the court cor-
rectly charged the jury as to the duty of giving the accused the
benefit of every reasonable doubt, and told the jury what pas-
sion of anger, fear or terror would reduce the crime to man-
slaughter, it was not error to refuse an instruction that where
there is reasonable doubt as to the degree of criminal homicide,
the jury should give him the benefit of the doubt.

4. CRIMINAL LAW—EXCLUSION OF EVIDENCE—HARMLESS ERROR.—The
error of refusing to permit defendant to ask a question on cross-
examination of a State's witness will not be considered on appeal
where it does not appear in the record what the answer would
have been.

5. CRIMINAL LAW—EXCLUSION OF EVIDENCE—HARMLESS ERROR.—
Where it is undisputed that the killing in question grew out of
a dispute as to whether deceased, who was defendant's tenant,
had abandoned a part of the rented land, refusal of the court
to permit defendant to ask deceased's son concerning such aban-
donment, being asked for the purpose of showing that deceased
had abandoned his crop and that defendant went to the field
to protect his interests, *held* not prejudicial where the court
announced in the presence of the jury that defendant had a
right to go down there at the time the killing occurred.

6. HOMICIDE—EVIDENCE—PRIOR ALTERCATION.—It. was not error to refuse to permit the defendant in a murder case to introduce testimony as to the details of a prior altercation between plaintiff and deceased about ten days previously, where the court allowed the defendant to prove any threats which might have been made against defendant by the deceased.

7. HOMICIDE—EVIDENCE—COLLATERAL MATTER.—It was not error in a murder case to permit defendant to prove that deceased had previously turned back to defendant's wife the land over which the controversy arose which resulted in the killing, as the evidence related to a collateral matter and would have tended to confuse the jury.

Appeal from Miller Circuit Court; *James H. McCollum,* Judge; affirmed.

*Pratt P. Bacon* and *Louis Josephs,* for appellant.

*J. S. Utley,* Attorney General; *Jno. L. Carter, W. T. Hammock* and *Darden Moose,* Assistants, for appellees.

HART, J. J. W. Adams was indicted for murder in the first degree, charged to have been committed by killing J. W. Collum by shooting him, in Miller County, Arkansas. He was tried and convicted of murder in the second degree, his punishment being fixed by the jury at five years in the State Penitentiary.

It appears from the record that J. W. Adams owned a farm in Miller County, Ark., and rented about forty acres of it to J. W. Collum for the year 1922. Collum and his three boys were working the land. The killing resulted from a controversy between the parties about three or four acres of this land. Adams claimed that Collum got behind with his crop, and turned back to him three or four acres of corn, which he intended to use for a pasture.

On the other hand, it was the theory of the State that Collum had not turned this land back to Adams, and was working it, as he had the right to do, when he was killed by Adams. In any event, Collum and his three boys were plowing in this patch at the time the shooting occurred.

According to the witnesses for the State, J. W. Adams went down into the field with a Winchester rifle,

and when J. W. Collum plowed out to the end of a row in the patch in question, Adams, applying a vile epithet to Collum and his sons, asked them what they were doing plowing up his corn and stealing his grass. He at once threw up his Winchester rifle and shot J. W. Collum. When Adams threw the Winchester rifle to his shoulder, Collum said, "Don't kill me with that thing." As soon as J. W. Collum was shot, he fell and died. Adams immediately reloaded his gun and threw it on one of the sons of Collum, who had started to Collum after he was shot. Adams cursed the boy and told him that if he came on he would do him the same way as he had done his father. Adams made the boy take his plow and go home. Collum had not done or said anything to Adams at the time the latter shot him. Collum was unarmed at the time he was killed, except that he had a small knife in his pocket. Neither Collum nor his boys made any attempt whatever to advance upon or to assault Adams at the time the latter shot and killed the elder Collum.

Adams was a witness for himself. According to his testimony, the patch of corn had been turned back to him by J. W. Collum, and there had been some threats made against him by the Collums on account of the transaction. He saw the Collums plowing up the patch, and went down into the field to see them about it. He carried his rifle with him solely for protection in case they attacked him. When he got down into the field, J. W. Collum drew his knife and started towards him at a rapid gait, threatening to kill him. He shot Collum to prevent him from cutting him with his knife, when Collum was about fifteen steps from him.

On the other hand, the witnesses for the State testified that the deceased was nearly thirty yards away from Adams when the latter shot him. Adams was seventy-eight years old at the time he shot and killed Collum.

The evidence for the State was amply sufficient to sustain a conviction of murder in the first degree, and

counsel for the defendant do not contend to the contrary. Their reliance for a reversal of the judgment of conviction is on account of the alleged error in the admission of evidence and the giving of instructions.

We have recited the substance of the evidence for the State and for the defendant in order that a discussion of the assignments of error relied upon for a reversal of the judgment may be more readily understood.

It is first contended that the court erred in refusing to give instruction No. 13 at the request of the defendant. The instruction is as follows: "13. You are instructed that the fact that defendant went to where the deceased was, armed, is a circumstance the jury may consider in determining what was his purpose and intention in going there; but if, after considering all the evidence in the case, you believe he went there, not for the purpose of engaging in a difficulty with the deceased, but for the purpose of seeing him on a matter of business, and that he armed himself solely for protection, then the fact that he armed himself would not cut off his right of self-defense."

The court gave the following instruction at the instance of the State: "11. If you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, armed with a deadly weapon, sought the deceased with the felonious intent to kill him, or sought, or brought on, or voluntarily entered into the difficulty with the deceased with the felonious intent to take his life, then the defendant cannot invoke the law of self-defense, no matter how imminent the peril in which he found himself placed."

It also gave the following for the defendant:

"11. Defendant seeks to justify the killing on the ground that deceased was making an attack on him under such circumstances as indicated an intention on the part of deceased to take defendant's life, or do him some great bodily harm. You are instructed that, whether deceased intended such harm or not, if it ap-

peared to the defendant, from his standpoint, acting as a reasonably prudent person, and without fault or carelessness on his part in coming to such conclusion, and if the circumstances were such as to excite the fears of a reasonable person, and if defendant acted in good faith and without fault or carelessness, and not in a spirit of revenge, and if it appeared to him that the danger was urgent and pressing, and that it was necessary to kill deceased to prevent him from killing the defendant or doing defendant great bodily harm, then the killing would be justified, and you should acquit the defendant.''

It is the contention of counsel for the defendant that the court, having given instruction No. 11 at the request of the State, should also have given instruction No. 13 at his request, and that instruction No. 11 given at his request did not cure the error in refusing to give instruction No. 13.

We do not think that the court erred in refusing to give instruction No. 13. This instruction was improper because it singled out and gave undue prominence to the testimony of the defendant to the effect that he armed himself solely for his own protection. The court is not required to segregate any fact from all the material facts in the case, and, by calling especial attention to it, give that fact undue prominence.

It was the theory of the State that Adams became angered because he saw the deceased and his sons plowing up the patch of corn, which he claimed had been turned back to him, and that he armed himself with his rifle for the purpose of entering into a difficulty with the deceased and killing him.

On the other hand, it was the theory of the defense that he carried his rifle with him for his own protection, and that he went down into the field to remonstrate with Collum about plowing up the corn and grass. He claimed that Collum advanced upon him rapidly with an open knife, and that he killed him to save his own life. This theory of the case and the appearance of danger to

the defendant were fully presented to the jury in instruction No. 11 given at the request of the defendant, and copied above. Therefore the court having given the respective theories of the State and of the defendant about the killing, it was not prejudicial error for the court to not single out the alleged fact that the defendant carried the gun for his own protection, from the other facts in the case, and emphasize to the jury that the fact that he armed himself under these conditions would not cut off his right of self-defense. Therefore the court did not err in refusing to give instruction No. 13 at the request of the defendant.

It is next insisted that the court erred in refusing to give instruction No. 8 at the request of the defendant. The instruction is as follows: "If you are satisfied, beyond a reasonable doubt, that the defendant is guilty of some grade of criminal homicide as explained in these instructions, but entertain a reasonable doubt as to whether it is murder or manslaughter, you should then give him the benefit of the doubt, and convict him of manslaughter, but if you entertain a reasonable doubt as to whether defendant is guilty of any degree of criminal homicide, as explained in these instructions, you will give him the benefit of that doubt, and acquit him."

Crawford & Moses' Digest, § 3183, provides that, where there is a reasonable doubt of the degree of the offense which the defendant has committed, he shall only be guilty of the lower degree. Hence the defendant assigns as error the refusal to give the instruction just copied.

In *Price* v. *State,* 114 Ark. 398, the court said that this section of our statute does not, in express terms, require the court to instruct the jury in the precise language of the statute. The court further said that it is sufficient if the instructions as a whole convey that idea to the jury. In the application of the rule it was held that a general instruction which required the jury to acquit where the evidence fails to satisfy it, beyond a reasonable doubt, of the guilt of the defendant, was

sufficient to impose upon the jury the duty of giving the accused the benefit of every reasonable doubt upon each degree of the homicide charged in the indictment.

So in the present case the court, in at least three other instructions (two of which were given at the request of the defendant), told the jury that the law presumes the defendant innocent of the charge, and that this presumption continues and prevails until the jury is satisfied from the evidence, beyond a reasonable doubt, of his guilt. The court told the jury that this presumption was not a mere form, but was a substantial part of the law, and was binding upon it, unless the evidence satisfied it of his guilt beyond a reasonable doubt.

The court, in instruction No. 7, given at the request of the defendant, told the jury what passion of anger, fear, or terror would reduce the crime to manslaughter, and expressly instructed the jury that, if the defendant killed the deceased while acting under such passion it could not convict him of any crime greater than manslaughter.

The jury by its verdict convicted the defendant of murder in the second degree, and under the circumstances stated, and for the reasons given, we do not think that the court erred in refusing to give instruction No. 8, as requested by the defendant.

It is next insisted that the court erred in refusing to allow Frank Smith to answer, on cross-examination, a question by the attorneys of the defendant, asking him what Collum's boys said about the defendant in the presence of their father. The record does not show what the answer of the witness would have been, and this alleged error cannot be considered on appeal. *McKinney* v. *State,* 140 Ark. 529.

The next assignment of error is that the court erred in refusing to allow the cross-examination of Harrison Collum, a son of the deceased, as to the details of quitting a part of the crop. The witness was asked if they had not quit a part of the crop in the early part of

June, and replied that they had not exactly quit it. He was asked what he meant by the word "exactly," and the court refused to allow him to answer the question, on account of its being immaterial, up to that time, what took place with respect to the crop. The court in this connection, however, said that the defendant had the right to go down there at the time the killing occurred.

According to the statement of one of the attorneys for the defendant, he asked this question for the purpose of showing that the tenant had abandoned the crop, and that the defendant went down there to protect his interests. As we have seen, the court at once said that "of course the defendant had a right to go down there," but that, for the present, the witness would not be allowed to go into details with regard to giving up that part of the crop. If the question was asked for the purpose of showing that the defendant had a right to go down there, and the court said, in the presence of the jury, "of course he had a right to go down there," no prejudice could have resulted to the defendant.

The next assignment of error is that Hugh Collum was not allowed to answer the following question propounded by the attorneys for the defendant: "Q. Were you there about ten days before this happened, when Mr. Adams talked to your papa about their corn patch there, and when your papa hit him in the head with a hoe-handle?" The attorney for the defendant was referring to a difficulty which had occurred between the deceased and the defendant about ten days before the killing. The court refused to let the witness answer, but told the defendant's attorneys that they might prove any threats made by the Collums against the defendant, but that they could not prove the details of a previous difficulty. The court was right in its ruling. It was not proper to enter into the examination, in detail, of a previous difficulty, for the purpose of determining which of the parties was in the wrong. Such a course would tend to confuse or mislead the jury. Any previous difficulty between the parties was a collateral issue, and could only be shown

in a general way to show the state of feelings between the parties and as shedding light upon who was the aggressor in the difficulty which ended in the homicide. The defendant was allowed to show that the parties had had a difficulty about the corn patch, and the court allowed the defendant to prove fully any threats which might have been made against him by the deceased before the fatal difficulty. Hence this assignment of error was not well taken.

Finally, it is insisted that the court erred in not allowing the defendant to show that the deceased had turned back to the wife of the defendant the patch of corn which caused the fatal difficulty. We do not think, however, that any prejudice resulted to the defendant on this account. The defendant was allowed to state fully all of his dealings with his tenants. The undisputed evidence showed that the difficulty resulted from ill feeling between the parties on account of the patch of corn where the killing occurred. The evidence, if admitted, would have tended to divert the minds of the jury to a collateral issue and thereby have confused it rather than assisted it in reaching a proper conclusion as to whether the defendant acted in his necessary self-defense in killing the deceased.

We have carefully examined the record, and find no prejudicial errors in it. It follows that the judgment will be affirmed.