PATTON v. STATE.

Crim. 3879.

Opinion delivered April 30, 1934.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* for appellee.

SMITH, J. Three brothers, Cleadus, John and Chelton Fields, attended a dance in a hall owned and operated by Arthur Peck. Oral and Carrol Patton, who were brothers, also attended the dance. Cleadus Fields purchased a bottle of whisky, as he supposed, from a person whom he thought was one of the Patton boys. When opened it was found that the bottle contained urine, and not whisky, whereupon Cleadus Fields approached the Patton boys and demanded the return of his money, expressing, at the same time, in rather forcible, though

somewhat inelegant, terms, his opinion of the person who would play such a trick as had been played upon him. One of the Patton boys, after denying that he had made the sale, said to Fields: "If you want to live long, you had better keep your mouth shut." The parties commenced fighting. It was dark, and they were out-of-doors, and the testimony is in irreconcilable conflict as to who actually began the fight. At any rate, John Fields, who was standing by, jumped at one of the Pattons to seize a pistol which he saw the latter draw, but he failed in the attempt to seize it and was shot and killed. Peck, owner and operator of the dance hall, hearing the shooting, came to the front door to see what was happening, and was himself shot and killed as he appeared in the door. Peck lived long enough to make a dying declaration to the doctors who attended him, and they testified that in this declaration Peck stated that "When he opened the door, the Patton boy was standing just outside the door, and he just laid his hand on his shoulder and he told him to stop that, and he wheeled and shot him." Peck did not state which one of the Patton boys shot him.

Oral Patton escaped and has not been arrested. Carrol Patton was arrested the night of the shooting, and at the trial for killing Peck from which this appeal comes, the testimony offered in his behalf was to the effect that he was unarmed, and that he did none of the shooting, and that all of the shots were fired by his brother Oral. The sheriff testified that when he arrested Carrol he found him lying across a bed with his clothes on, and that he had a pistol and scabbard in the bed with him. This pistol was a .38 calibre revolver, and a deputy sheriff who assisted in making the arrest testified that he was an expert in fire arms, and that he examined the revolver at the time of the arrest and found that three chambers had been very recently fired—within less than twenty-four hours. Some .32 calibre shells were found at the place of the shooting. The deputy sheriff testified that an automatic pistol ejects the shells as fired, but that the shells must be removed from a revolver by

hand. One of the doctors who attended Mr. Peck testified that the wound received by him and which caused his death appeared to have been inflicted by a hard bullet, and not a lead bullet, because the wound was not jagged or irregular, and that the wound, from its appearance, could have been inflicted by either a .32 or a .38 calibre pistol. The deputy sheriff testified also that the pistol found in Carrol's possession was loaded with two lead bullets and two copper jacket bullets, and that the latter were harder than the former and would make a less jagged wound.

These facts appear to answer the assignment of error that the testimony is insufficient to support the verdict of the jury, which imposed a sentence of ten years in the penitentiary for murder in the second degree. The evidence is sufficient to sustain the conviction upon either of two grounds, (1) that appellant may actually have fired the fatal shot, or (2), if not, that he was present, aiding, abetting and encouraging his brother in firing it. It was not questioned that one or the other did fire the fatal shot, and that they were acting in concert is sufficiently established to sustain the conviction. This is made certain by testimony to the effect that the Patton brother who fired the first shot was advised by the other to ''Shoot him!'' *Simmons* v. *State,* 184 Ark. 373, 42 S. W. (2d) 549.

In support of the motion for a new trial testimony was offered to the effect that a member of the jury had failed to pay his poll tax, and because of this failure was not a qualified elector. The verdict and the judgment pronounced thereon were not void on this account. It was held, in the case of *James* v. *State,* 68 Ark. 464, 60 S. W. 29, (to quote the headnote) that: ''Objection that a juror has not paid his poll tax, if available at all, comes too late after verdict,'' and that holding was reaffirmed in the case of *Teel* v. *State,* 129 Ark. 180, 195 S. W. 32.

A different question is presented where the juror is interrogated as to the payment of his poll tax, and falsely answers that he had paid, when, in fact, he had not. In such a case the juror, through his fraud and false tes-

timony, imposes himself upon the court as a competent juror, when he is, in fact, ineligible to serve as such. But if the defendant in a criminal case, or either party to a civil case, wishes to raise the question of a juror's eligibility, he must ask the specific question upon the *voir dire* examination, and, if he does not do so, the right to raise the question is waived, and cannot be raised after the jury has been sworn or a verdict has been returned. It appears that the juror, with certain others, was summoned as a bystander, all of whom were asked by the court the general question if they were qualified electors, but no specific question was asked by the court, or by counsel in the case, whether these special jurors had paid their poll tax. This being true, the objection that they had not done so comes too late and cannot now be raised. Section 6343 Crawford & Moses' Digest; *Fones Bros. Hdw. Co.* v. *Means,* 182 Ark. 533, 32 S. W. (2d) 313; *Lynch* v. *State,* 188 Ark. 831, 67 S. W. (2d) 1011.

It was assigned as error that the verdict had been arrived at by lot, and in support of this assignment of error the foreman of the jury testified as follows: All of the jurors had voted that defendant was guilty of murder in the second degree, and all had voted to fix his punishment at some term of years allowed by law, but they had not agreed on the punishment. The witness testified that, after agreeing that defendant should be found guilty of murder in the second degree, they first voted whether he should be given the maximum punishment of twenty-one years, and, the vote not being unanimous, it was then agreed that the vote should be taken on the question whether he should be given a sentence of seven years, and this vote was not unanimous. The witness then proceeded to say: "After these first two (votes) were taken, there was another one taken. Each one was going to put on a piece of paper how much they were going to give him; they were trying to get at how we stood. There were three for seven years; two for twelve; one for five; three for fifteen, and three for ten." There was offered in evidence the quotient of this verdict made in the jury room, which gave the result of

ten and one-half years. The witness was asked, however: "Did you agree beforehand that you would take that result?", and he answered: "No, sir, that would just give us an idea of how we stood." Another ballot was then taken, and all of the jurors voted, not for ten and one-half years, but for ten years.

It thus appears that the verdict was not even a quotient verdict. However, we prefer to put the decision upon the ground—and we do put it upon the ground—that it was not competent for the juror to thus impeach the verdict.

The statute (subdivision third of § 3219, Crawford & Moses' Digest) provides that a new trial may be granted "where the verdict has been decided by lot, or in any other manner than by a fair expression of opinion by the jurors." But the statute also provides that: "A juror can not be examined to establish a ground for a new trial, except it be to establish, as a ground for a new trial, that the verdict was made by lot." Section 3220, Crawford & Moses' Digest.

In the case of *Speer* v. *State,* 130 Ark. 464, 198 S. W. 113, we said: "Lot involves an element of chance. The quotient verdict is not the result of a lottery." We there also said that: "Verdicts of juries cannot be impeached by the evidence of jurors except where the verdict was reached by lottery."

In the case of *Snow* v. *State,* 140 Ark. 9, 215 S. W. 3, it was insisted that the judgment, sentencing the defendant to a term in the penitentiary, should be reversed because it had been rendered upon a quotient verdict. In overruling that contention, we there said: "Again, it is urged that the judgment should be reversed because the jury fixed the verdict by the quotient method. This charge is not sustained by evidence, except by the affidavit of a juror, which is inadmissible to impeach the verdict. *Speer* v. *State,* 130 Ark. 457, 198 S. W. 113."

There appears to be no error in the record prejudicial to appellant, and the judgment must therefore be affirmed, and it is so ordered.