HARMON *v.* STATE.

Crim. 3939

Opinion delivered April 8, 1935.

824

*Edward Gordon,* for appellants.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

BAKER, J. The appellants, Frank Harmon, Cecil Harmon and Orville Griffith, were indicted at the October term, 1934, of the Conway County Circuit Court, upon a charge of murder in the first degree for the homicide of John Lilly. It was alleged that they killed John Lilly by striking, beating, cutting, bruising and wounding him with a stick, plank, rock, instrument and thing, the exact name and character being to the grand jury unknown. It is alleged that the killing took place on or about the 10th day of August, 1934.

The defendants were tried and convicted of murder in the second degree, and it is to reverse this conviction that the appeal was lodged in this court.

The defendants insist upon six alleged errors as follows:

First: That the court erred in not holding that Jack McCraven was a disqualified juror, and that by deception and prevarication he had caused the defendants to accept him as a juror.

Second: That the court erred in refusing to give defendants' requested instruction No. 1 as offered, and in giving said instruction as modified by the court.

Third: That the court erred in refusing to permit the defendants' attorney to introduce a certificate of the county clerk of Van Buren County, showing that no mar-

riage license had ever been issued to John Lilly and the prosecuting witness, Mrs. John Lilly.

Fourth: That the court erred in refusing to permit the defendants to prove by witness, Robert Swope, that John Lilly, deceased, had told him that he had sexual intercourse with Frank Harmon's wife any time he wanted to, and that he was trying to run Frank Harmon off.

Fifth: That the court erred in holding that the defendants could not introduce testimony showing the reputation of the deceased for truth and morality; and,

Sixth: That the court erred in refusing to permit the wife of Frank Harmon to testify relative to the assault which the witness, Mrs. John Lilly, claimed he made upon her.

These several alleged errors will be discussed in the order presented, and such testimony as may be pertinent to each of the respective propositions will be set forth in the discussion.

It may be said, however, that certain facts testified to by witnesses, and which must be taken as true, as determined by the jury, lead us to the following conclusions:

John Lilly and his wife, if she was indeed married to him, were living upon a farm, and nearby, upon the same farm, Frank Harmon, sometimes called Cap Harmon, and his wife resided. The wife of Frank Harmon was the daughter of Mrs. John Lilly. The three parties convicted here came upon this farm and had a fight with John Lilly. Mrs. Lilly testified that they came to her house, broke in the door, and that she attempted to secure possession of a gun that was lying upon a bed in her house, but that they took the gun away from her and went out through the rear of the house to find her husband. That, on account of her fright, she ran away and escaped, her daughter, Mrs. Frank Harmon, being with her, and did not see anything of the conflict between the parties. Defendants testified that Cap Harmon and his wife had left home, and that Cap Harmon was returning to his home, and the other parties accompanied him, going there for the sole purpose of feeding and taking care of

some hogs and chickens, and that when Griffith, who was ahead of the others, went around the house, he was assaulted by John Lilly; that Lilly hit him upon the head with a rock; that he was knocked down and that Lilly attempted to get on him while he was upon the ground; that he kept Lilly off for a time by kicking him, but finally Lilly succeeded in getting on Griffith and was beating him on the face and head with a rock he had in his hand; that Cecil Harmon struck Lilly a blow somewhere about the face.

John Lilly was found a little bit later very badly beaten and bruised. His head and face were beaten black. All his ribs were broken except one, and in a short time he died.

In accordance with this testimony and other testimony introduced, we think the jury was warranted in finding the defendants guilty of murder in the second degree. The jury might well have found that the three defendants, appellants herein, went to John Lilly's house for the purpose of administering the severe beating that caused his death, accomplishing, perhaps, what they intended to do. We are not ignoring in this statement the matter of much conflicting testimony, but we are saying that the findings of the jury warranted the conclusions above set out.

It is not insisted, however, that the facts are not sufficient to warrant the conviction, as will be observed from the above alleged errors, forming the basis for this appeal.

The first question that is presented, under the aforesaid alleged errors, as we have set them forth, is the matter in regard to the juror, Jack McCraven. McCraven was taken upon the jury, and his examination upon *voir dire* is not brought forward in the bill of exceptions, but some of the facts in relation to it were permitted to be developed upon a motion made by the defendants in arrest of judgment. It was charged that McCraven had expressed an opinion about the defendants and their connection with the crime, in saying that "they would scarcely escape the electric chair, and anyway get not less than twenty-one years, because the neighborhood was

badly stirred up over the crime.'' This was testified to,. as we understand the record, by Oscar Johnson, and Mrs. Dessie Boggass testified that she heard McCraven say he wanted to get on the jury, and that he was afraid he was going to have trouble to get on it. This was before the jury was made up. It was also testified that McCraven was in the car with Curtis Wilson and Frank Reed, who were investigating the facts in relation to the alleged murder, and that Wilson and Reed, the first a constable, and the second the coroner, went to several different places accompanied by McCraven, and interviewed witnesses while the case was in the course of preparation for examination before the coroner, but the parties making such investigation testified that they did not discuss as between themselves, in McCraven's presence, any of the facts in relation to the alleged murder, nor did they discuss such facts in McCraven's presence, with any of the witnesses they interviewed.

McCraven testified in the matter, denying that he made any statements in the presence of Johnson or Mrs. Boggass, or that he expressed any opinion as to the guilt or innocence of any of the parties; admitted that he went upon the trip with the two officers who were interviewing witnesses, and says that he heard no discussion of the facts in relation to the crime, and stated that he sat on the back seat of the car and did not hear any of the discussion as between the two officers while they were traveling; said they talked about the election, but did not discuss any of the facts in relation to the alleged murder. McCraven was a bystander, who was called and served upon the jury. Said he had not formed or expressed any opinion as to the guilt or innocence of the defendants. When examined upon the motion, he answered that he knew something about the case; that he had heard the coroner's inquest; did not talk about the case with Curtis Wilson. He said that nearly every man within ten miles of the place had talked about the case and had some opinion. Wilson said there were no conversations as between him and McCraven about the case; that he had had a conversation with Oscar Johnson, but that he did not hear McCraven make any statement that the defendants

would scarcely escape the electric chair, or at least get twenty-one years. He heard no one talk to McCraven about the case.

Frank Reed testified to substantially the same statements and facts as did Curtis Wilson, that he or Wilson did not discuss the case with any of the witnesses in the presence of McCraven, nor did they discuss the case with McCraven.

Jack McCraven's statement, in regard to his examination on *voir dire,* was about as follows: "A. After I was sworn, Ed said, 'Jack, where do you live?', and I said, 'Springfield.' 'How far is that from the scene of this trouble?' I said, 'About five and a half miles.' 'Do you know anything about this case?' I said, 'Well, I know lots.' He said, 'What have you heard?' and I said, 'I heard the preliminary trial,' and he asked me if I was selected on the jury could I try it according to the law and without any partiality, and I told him I could."

Other testimony was offered, and it was shown that the attorney, Mr. Gordon, representing appellants, had known the juror for a number of years.

The court heard all of this testimony, and other testimony which we have not attempted to set out, but the substantial effect of which is set out herein, and upon the hearing overruled the motion filed in arrest of judgment. This was a matter that addressed itself to the discretion of the trial court. We cannot find, as a matter of law, that the court abused that discretion. The objection under the circumstances comes too late. *Newton* v. *State,* 189 Ark. 789, 75 S. W. (2d) 376; *Gribble* v. *State,* 189 Ark. 805, 75 S. W. (2d) 660.

It does not appear from this record that the juror by any form of deception imposed himself upon the court or defendants. *Doyle* v. *State,* 166 Ark. 506, 266 S. W. 459; *Patton* v. *State,* 189 Ark. 133, 70 S. W. (2d) 1034; *Van Hoozer* v. *Butler,* 131 Ark. 404, 199 S. W. 78.

The second alleged error is to the effect that the court erred in refusing to give defendants' instruction No. 1 as offered and in giving the instruction as modified by the court. Defendants' instruction No. 1 was to the effect "that the defendant, Cap Harmon, had a right to

return to his home and take the other defendants with him, and, if you find that defendants returned to the home of Cap Harmon, and the deceased made an assault upon Orville Griffith, one of the defendants, or all of the defendants, they had a right to defend themselves against said assault, and use such force as was necessary to prevent the deceased from killing either or all of them or inflicting great bodily harm upon them.''

The court modified the instruction and gave it as asked after modifying it, by striking out the words, "and use such force as was necessary to prevent the deceased from killing either or all of them or inflicting great bodily harm upon them.''

The court in instructions defined the different degrees of homicide, as included in the charge in the indictment, and expressly stated to the jury that these definitions were given without reference to the law of self-defense, which would be given in other and separate instructions.

The court gave instructions in regard to the law of self-defense, which, on account of the number and length of them, it is unnecessary to repeat here. These are numbered as instructions Nos. 19, 20, 21 and 22. No. 22 is as follows: "The danger must apparently be imminent, irremediable and actual, and he must exhaust all the means in his power, consistent with his safety, to protect himself, and the killing must be necessary to avoid the danger. If, however, the assault is so fierce as to make it apparently as dangerous for him to retreat as to stand, it is not his duty to retreat, but he may stand his ground, and, if necessary to save his own life or prevent a great bodily injury, slay his assailant.''

The court was not required to repeat or multiply instructions, and particularly is this true in a matter of this kind, wherein the jury had been told that the law of self-defense would be given separately from the other instructions.

This court has repeatedly held that it was not error to refuse requested instructions when the same matters are covered by other instructions given by the court. The

law of self-defense was fully covered by instructions given separately from those given on behalf of the State after due explanations given by the court therefor. *Griffin v. State,* 160 Ark. 166, 254 S. W. 469; *Smith v. State,* 168 Ark. 253, 269 S. W. 995; *McClaskey v. State,* 168 Ark. 339, 270 S. W. 498.

Again it was insisted, as a third ground, that the court erred in refusing to permit defendant's attorney to introduce a certificate of the county clerk of Van Buren County showing that no marriage license was ever issued to John Lilly and the prosecuting witness, Mrs. John Lilly. This ruling was proper. Several reasons might be urged to sustain the correctness of the court's ruling. The first is that it was not essential to determine whether or not Lilly and Mrs. John Lilly were in fact husband and wife. Second, that was not any part of the issues to be tried in the case. Third, if it was an effort to impeach Mrs. Lilly, it was not following any of the recognized methods of impeachment. Section 4187, Crawford & Moses' Digest. *Taylor v. McClintock,* 87 Ark. 243, 290, 112 S. W. 405. Another reason equally cogent is that a certificate of the fact, as made by a clerk, is wholly incompetent. Clerks may certify the records, or documents, legally in their custody, when duly authorized to do so, but there does not appear to be any authority for a clerk to certify to facts or the lack of them.

The fourth ground or alleged error is to the effect that John Lilly had made certain statements with reference to his alleged immoral conduct with Cap Harmon's wife, and that Lilly was trying to run Cap Harmon away from his home. It is not in every case that prejudice will result from a failure to disclose all details as a background or explanation of conduct of the parties. Defendants here do not claim, nor did any of them testify, that said statements were the occasion of their visit to the farm, and they do not show that Lilly attacked Cap Harmon, or that he even spoke to him. Their proof, about which all three of the defendants agree, is that Lilly did attack Griffith, a man he did not know and who did not know him. The theory that this boast and threat of Lilly's was competent to show that Lilly was the prob-

able aggressor is not by any proof connected with the facts they allege.

The testimony in this case, as given by the several defendants, appellants here, is to the effect that John Lilly assaulted or attacked Orville Griffith and not Cap Harmon or Cecil Harmon, and, according to the detailed statements and explanations as made by these appellants, there was no attack or attempted assault made by Lilly upon Cap Harmon. There is no statement in proof as purporting to have been made by Lilly at the time of the fight as tending to show that the attack made upon Griffith was in furtherance of any plan on the part of Lilly to get rid of Harmon.

It is not shown by the appellants that Lilly even knew that Cap Harmon was present at the time of the alleged attack upon Griffith. On that account the alleged statement attributed to Lilly, "that he wanted to run, or intended to run, Cap Harmon off his place," is in no way connected with the fight, as they explained, and on that account no prejudicial error appears by reason of the exclusion of this statement, alleged to have been made by Lilly, and about which Swope was willing to testify. It was urged by the appellants that this was part of the *res gestae* and therefore competent. The purported testimony which was offered and refused was to the effect that sometime prior to this rencounter Swope had heard Lilly make this statement. Under no definition given in the law books could it have been a part of the *res gestae,* and was not by reason thereof competent, nor is there any other reason why it would have been admissible under the facts disclosed in this case. *Adams* v. *State,* 160 Ark. 405, 254 S. W. 832.

If there is any evidence tending to show Lilly was trying to run Cap Harmon off the place, it is not set out in this record. The alleged threat is all, unaccompanied with any act or menacing conduct.

The rule laid down in *Palmore* v. *State,* 29 Ark. 248, does not justify a ruling different from that made by the trial court. The alleged threat does not explain Lilly's alleged assault on Griffith, his failure to attack Cap Harmon, if he knew he was present, as defendants have

detailed their defense. *Casteel* v. *State,* 73 Ark. 152, 83 S. W. 953.

The fifth ground alleged by the appellant is that the court erred in not permitting the defendants to offer proof tending to show the reputation of John Lilly, the deceased, for truth and morality. No statements of John Lilly are in evidence. There was nothing he said to be contradicted or impeached. His immorality, whatever it was, was not shown to have been the occasion or excuse for the fatal rencounter. The court did permit appellants, however, to introduce evidence tending to show the reputation of John Lilly, in the matter of his being law-abiding, or quarrelsome or turbulent character. It was upon this matter only that testimony might have been competent and would have served the jury in a determination of the facts. The court permitted an inquiry and evidence was introduced, both on the part of the defendants and the State, as to the disposition and reputation of John Lilly. This was part of the issues under consideration, and defendants were given full leave in that respect and availed themselves of it.

The sixth ground set out, but not insisted upon in appellants' brief, was to the effect that on the morning prior to the day of the killing Mrs. Lilly had visited in the home of Cap Harmon, and while there Cap Harmon, who had been whipping his wife, made an assault upon Mrs. Lilly. Mrs. Lilly had testified about this matter, and so did Cap Harmon testify about it, but it is argued that the wife of Cap Harmon should have been permitted to testify and make some explanation for the benefit of Griffith and Cecil Harmon, but the court refused to permit her to testify because of the fact that her husband, Cap Harmon, was one of the parties upon trial. In this the court committed no error.

We think it sufficient to say that we have examined carefully the record in this case, and we have given careful consideration to all of the instructions given and refused, and find no prejudicial error.

The judgment of conviction of the three appellants, Frank Harmon, Cecil Harmon and Orville Griffith, is therefore affirmed.