## Robert BAGGETT *v.* STATE of Arkansas

CR 73-25                                     494 S.W. 2d 717

### Opinion delivered May 28, 1973

*Howard, Howard & Howard,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Deputy Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Robert Baggett, was convicted of first degree murder for the slaying of June V. Shillcutt while perpetrating the crime of larceny. Approximately two months later a motion for a new trial was denied by the Pulaski County Circuit Court. On this appeal, two points are relied upon for a reversal, viz., that evidence obtained in a search of an apartment should have been suppressed, and second, that one of the jurors was incompetent to participate in the jury's deliberations. We proceed to a discussion of these points in the order named.

The court conducted a hearing in chambers at which time Officer R. B. Jones, of the Little Rock Police Department, and Baggett, testified. The evidence reflected that on August 12, 1970, two days after the death of Shillcutt, officers were admitted to an apartment at 311 West 7th Street, North Little Rock, which Baggett had occupied. The officers had no search warrant, but were voluntarily admitted by Jack Ballard, owner of the apartment

house. The apartment keys had been turned over to Ballard by Baggett on August 11, Baggett leaving on that date to go to Louisiana. Baggett, who was also employed by Ballard, quit his job at that time. The officers had received information that Baggett had spent a large sum of money and had left town. After being admitted to the apartment, they found the general appearance to be rather "messy". There were dirty dishes, left-over food in the pans and there were no bed clothes on the bed.

The officer testified:

"We looked in the drawers; there were no clothes in the drawers. We looked in the closets; there were no clothes in any of the closets. We looked in the—there was a pan on the stove that had not been cleaned for some time. We looked in the bathroom, and all the items that would be in the shelf were gone. The apartment gave the appearance that it was vacant."

In searching the room, various items were found, including keys which were found on the floor bearing the name "June B. Shillcutt." After completing the search, the officers went to the drug store operated by Shillcutt where his Chevrolet automobile was parked. One of these keys opened the driver's side door, and when inserted into the ignition, started the vehicle. The attack upon the warrantless search is based upon the assertion that there was no probable cause to search this apartment. The trial court held that Baggett had abandoned the apartment and ordinarily required procedures in searching occupied premises were not necessary. We agree that the apartment had been abandoned, even though the rent had been paid until Friday (two days after the search was made) and Baggett testified that he had planned to return to Little Rock if he did not find a job in New Orleans. What were the circumstances showing abandonment? Baggett quit his job, received pay for one day's work, told several people that he was going to New Orleans to get a job, paid all bills that he owed except one, told his friends in Little Rock good-bye on the 11th, turned the apartment keys over to the owner, and took all personal belongings to New Orleans with him. Of course, had he returned within the two days before his rent became due,

he could not have gone into his apartment for Ballard had the keys. The fact that the rent was paid up for three days after Baggett left does not mean that the apartment had not been abandoned. In *Feguer* v. *United States,* 302 F. 2d 214 (1962), the United States Court of Appeals (Eighth Circuit) passed on a similar contention. There, the court said:

> "The defense during the trial moved to suppress eight tendered government exhibits (the Dubuque rent receipt, the Howes identification, the Quality Cleaners slip, the Dubuque Laundry slip, the Milwaukee bank envelope, the bus ticket, the Wisconsin Employment Service card, and the one horseshoe die) which had been found and seized by the Dubuque police (and later turned over to the FBI) when, with the landlord's permission but without a warrant, they searched the room at 1004 Bluff Street on the night of July 12, 1960. This motion to suppress similarly rests on claims of unreasonable search and seizure under the Fourth Amendment. The trial court denied the motion on the ground that at the time of the search the defendant had left Dubuque with intent not to return and thus had abandoned the room.

> "The defense position is that these exhibits were seized on mere suspicion. It points out that the defendant had paid the room rent for a period not ending until July 14; that the lights were on when the room was entered; that the examining officers had no reason then to believe that the defendant was not still occupying the room or that his absence was more than temporary; and that the only real information they possessed was that the defendant had rented that room five days before." \*\*\*

The court proceeded to discuss the Fourth Amendment, a safeguard against unreasonable search and seizures, citing cases where Fourth Amendment rights were violated. It was then pointed out that the cases mentioned were concerned with occupied, and not vacated, premises, and the court held that the items of evidence found by government officials in the room rented by Feguer had

been discarded and abandoned. An earlier case was cited, the court stating:

"The present situation, it seems to us, is governed by *Abel* v. *United States,* 1960, 362 U.S. 217, 80 S. Ct. 683, 4 L. Ed. 2d 668. There, the defendant checked out of his hotel room, albeit with encouragement from arresting officers. After he had done so, but prior to the checkout hour, an FBI agent, with the consent of the hotel management, searched the room without a warrant and seized articles left in a waste basket. The court said, p. 241, 80 S. Ct. p. 698:

' * * * it was entirely lawful, although undertaken without a warrant. This is so for the reason that at the time of the search petitioner had vacated the room. The hotel then had the exclusive right to its possession, and the hotel management freely gave its consent that the search be made. Nor was it unlawful to seize the entire contents of the wastepaper basket, even though some of its contents had no connection with crime. So far as the record shows, petitioner had abandoned these articles. He had thrown them away. So far as he was concerned, they were *bona vacantia.* There can be nothing unlawful in the Government's appropriation of such abandoned property. * * *'

"Abandonment is not to be foreclosed here until the paid rent period ran out any more than, in the *Abel* case, it was not foreclosed until the check-out hour had arrived. It follows that the search and seizure here, although without warrant, were not illegal and that the evidence in question is not inadmissible on the constitutional grounds asserted."

In the instant case, we think an abandonment of premises, and the items found, could not be more clearly shown than by the circumstances herein mentioned, and we hold appellant's contention to be without merit.

On a motion for new trial, appellant offered evidence that juror Ernest Mason was not qualified to sit on the

jury[1], and it is contended that the jury verdict should be set aside for that reason. We disagree. Ark. Stat. Ann. § 43-2204 (Repl. 1964) provides as follows:

> "A juror cannot be examined to establish a ground for a new trial; except it be to establish, as a ground for a new trial that the verdict was made by lot."

We have held many times that a verdict cannot be impeached by a juror's testimony except to prove that the verdict was reached by lottery. *Wallace* v. *State,* 180 Ark. 627, 22 S.W. 2d 395; *Post* v. *State,* 182 Ark. 66, 30 S.W. 2d 838; *Patton* v. *State,* 189 Ark. 133, 70 S.W. 2d 1034; *Goodnaugh* v. *State,* 191 Ark. 279, 85 S.W. 2d 1019.

Finding no prejudicial or reversible error, the judgment is affirmed.

It is so ordered.

GEORGE ROSE SMITH, J., not participating.

---

[1]The juror's ability to serve was allegedly impaired by the taking of insulin.