2001 UT 79

**STATE of Utah, Plaintiff and Appellee,**

v.

**Hilario MEDINA-JUAREZ, Defendant and Appellant.**

**No. 981607.**

Supreme Court of Utah.

Aug. 31, 2001.

Rehearing Denied Sept. 21, 2001.

Mark Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Roger K. Scowcroft, Salt Lake City, for defendant.

## AMENDED OPINION

WILKINS, Justice:

¶ 1 A jury convicted defendant of murder, a first degree felony in violation of section 76–5–203 of the Utah Code, and theft, a second degree felony in violation of section 76–6–404 of the Utah Code. Defendant argues that his convictions should be reversed because he was denied the effective assistance of counsel, the trial court committed plain error with regard to certain evidence admitted at trial, and the trial court erroneously instructed the jury. We affirm.

## BACKGROUND

¶ 2 We recite the facts from the record in the light most favorable to the jury's verdict. *State v. Litherland*, 2000 UT 76, ¶ 2, 12 P.3d 92. The dead body of Edward Livsey was discovered by two hikers in Emigration Canyon in August 1997. His legs and hands were bound together with shoelaces. A red bandana was tied around his neck, and the State medical examiner concluded that he died from asphyxia. The victim also had a bruise on the back of his neck, which the medical examiner said could have been from a blow that rendered him unconscious.

¶ 3 On the day before the victim's body was found, the victim and defendant drove in the victim's car to the train station near downtown Salt Lake City and picked up Roberto Sanchez Martinez (Martinez), a Mexican immigrant, who was looking for gardening work. Defendant asked Martinez if he wanted to do some work for them. Martinez said yes and got in the car. Because Martinez did not speak English, he spoke only to defendant, and did not speak directly with the victim. Instead of taking Martinez to a place to work, the three men drove around Salt Lake City, drinking beer.

¶ 4 After they had driven around for awhile, defendant told Martinez that they were going to a party in the mountains. Martinez asked to be driven back to the homeless shelter, but defendant told him not to worry because he would be paid for a whole day's work. Sometime before two o'clock that afternoon, the three men drove up Emigration Canyon. The victim parked

the car, and all three men got out. Defendant and the victim engaged in anal intercourse and then returned to the car, where Martinez was waiting.

¶ 5 The three men then got back into the car and started down the canyon. Less than a mile down the road, defendant pulled out a knife and ordered the victim to stop the car. When the victim pulled over, defendant told both men to get out of the car. Outside the car, defendant and the victim began arguing. Martinez told defendant that he needed to relieve himself, and he walked a few feet away to do so. When Martinez returned, he heard the victim scream. Defendant struck the victim several times in the back of his neck with his fist, while still clutching the knife in his fist. The victim fell to the ground and did not move. Defendant choked the victim with his hands. Defendant told Martinez that if he tried to interfere, he would kill him.

¶ 6 Martinez ran to the side of the road to summon help, but defendant ran after him and again threatened to kill him. Ultimately, defendant removed the victim's shoelaces from his shoes and tied his hands and feet together. Defendant also tied a red bandana he had with him tightly around the victim's neck. Defendant searched the victim's pockets and took the keys to the victim's car. Defendant ordered Martinez back into the car, threatening him with the knife.

¶ 7 As defendant and Martinez were driving back into Salt Lake City, Martinez asked defendant to let him out. Defendant refused and told Martinez that he was coming with him. Defendant drove first to Mesquite, Nevada, where he put all of the victim's belongings into a black bag from the trunk of the car and threw the bag into the garbage. Defendant then drove to Las Vegas, Nevada.

¶ 8 When they arrived in Las Vegas, Martinez and defendant stayed in a trailer with one of defendant's friends. The next day, Martinez went with defendant and his friends to a nearby lake, and then to a casino. Defendant and his friends watched Martinez the entire time, to make sure he did not get away.

¶ 9 On Wednesday morning, while driving the victim's car with Martinez and two of defendant's friends, defendant was stopped by North Las Vegas police officers. The police checked the license plate on the car, and upon discovering that it was stolen, arrested all four occupants. The North Las Vegas police then notified the Salt Lake City Sheriff's Department.

¶ 10 Detectives Forbes and Chidester flew from Salt Lake City to Las Vegas to interview the suspects. The detectives interviewed defendant twice within a twenty-four hour period. Each time defendant was given Miranda warnings, and each time defendant waived his rights and agreed to speak with the detectives. Both interviews were conducted using an interpreter, who translated the detectives' questions to defendant, and then translated defendant's answers back to the detectives. During both interviews, defendant maintained that he did not kill the victim. Defendant told the police that he was not in Salt Lake City at the time of the murder and had not been for four or five months. He said that he came to the United States from Mexico about two weeks before. Defendant told the police that he bought the victim's car from a man in a bar in Las Vegas for $300. When asked where he got the money to buy the car, defendant said that he had earned the money working in Phoenix, Arizona, but had spent the last week in Las Vegas.

¶ 11 At trial, the jury heard testimony from Martinez describing the events he witnessed before, during, and after the victim's death. Defendant did not testify, but his explanation of how he had acquired possession of the victim's car and his claim of innocence in the killing of the victim were admitted into evidence through the testimony of Detective Forbes. Physical evidence, including a Utah bus pass, a key ring, and defendant's fingerprints taken from the victim's car, was also admitted. The jury convicted defendant of murder and theft.

¶ 12 On appeal, defendant raises numerous claims. He argues that (1) trial counsel provided ineffective assistance by failing to object to Detective Forbes's testimony and the admission of the physical evidence; (2) the

trial court committed plain error in admitting Detective Forbes's testimony and the physical evidence; (3) the trial court erred in refusing to give a requested jury instruction; and (4) the cumulative effect of the errors committed by the trial court warrants reversal, even if the individual errors standing alone do not.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 13 Defendant argues that trial counsel provided ineffective assistance because he did not object to Detective Forbes's testimony about the statements defendant made to the detective while defendant was in custody, statements defendant believes were obtained in violation of his Fifth Amendment rights. Defendant also asserts that trial counsel should have objected to Detective Forbes's testimony on the basis that the testimony was inadmissible hearsay because the detective testified about statements made by defendant to an interpreter who translated the statements for the detective. Finally, defendant argues that trial counsel was ineffective because counsel did not object to the admission of a Utah bus pass and a key ring with a Utah grocery store tag found in defendant's possession at the time of his arrest, and defendant's fingerprints found on the victim's car.

█ ¶ 14 In reviewing an ineffective assistance of counsel claim we apply the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To satisfy that test, the defendant must show: "(1) that counsel's performance was deficient below an objective standard of rea-

sonable professional judgment, and (2) counsel's performance prejudiced the defendant." *State v. Martinez*, 2001 UT 12, ¶ 16, 26 P.3d 203. If a defendant fails to establish either of the two parts of the *Strickland* test, counsel's assistance was constitutionally sufficient, and we need not address the other part of the test.

█ ¶ 15 In this case, defendant's ineffectiveness claim fails because he has not shown that he was prejudiced by trial counsel's performance. Even if defendant's trial counsel had successfully kept out the testimony of the detective, introduction of the Utah bus pass and key ring with the Utah market tag, and evidence of defendant's fingerprints on the victim's car, the jury still had before them the testimony of Martinez, which, if believed, was overwhelmingly sufficient to convict defendant. Martinez testified, among other convincing details, that defendant forced the victim, at knife point, to pull off the road in the canyon, struck the victim on the back of the neck, and then strangled him. The jury could have convicted defendant based solely on Martinez's testimony, and defendant has failed to convince us that there is any reasonable likelihood of a different result absent the conduct by his trial counsel of which he complains.

█ ¶ 16 In failing to establish the reasonable likelihood of a more favorable outcome at trial, defendant fails to establish ineffective assistance by his trial counsel. As a result, we need not examine the specific conduct of which defendant complains to ascertain whether or not it falls below the objective standard of reasonable performance by counsel.[1]

---

1. However, to avoid misunderstanding, we also note that counsel's decision not to object to the detective's testimony was, as found by the trial court on remand under rule 23B of the Utah Rules of Appellate Procedure, a conscious and specific strategic choice made by counsel. Counsel believed the defendant would not benefit from taking the stand in his own defense because he would not stand up well to cross-examination and would not otherwise be a good witness. The testimony of Detective Forbes would alert the jury to defendant's theory of the case, namely, that he was in possession of the victim's automobile and keys, and had his fingerprints on the

victim's car, because he had purchased the car for $300 from a stranger in a bar in Las Vegas. Only by allowing the introduction of the detective's testimony would defendant be able to argue his theory to the jury without taking the stand himself.

We are persuaded that trial counsel's strategy, and resultant performance, were well within the limits of the objective standard of reasonable performance, given the circumstances and facts presented by the case alleged against the defendant by the State at trial. The only other element of trial counsel's performance defendant challenges on appeal as deficient is counsel's

## II. ADMISSION OF DEFENDANT'S STATEMENTS AND PHYSICAL EVIDENCE

¶ 17 Next, defendant argues that the trial court committed plain error in admitting defendant's statements to Detective Forbes because the statements were taken in violation of defendant's Fifth Amendment rights, and because the statements were inadmissible hearsay based on the fact defendant made his statements to the detective through an interpreter. Defendant also argues that the trial court committed plain error in admitting the key ring and the fingerprints.

¶ 18 To demonstrate plain error, defendant must establish the following: "(i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful...." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). In order to show that the error is harmful, defendant must demonstrate that "absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *Id.* at 1208–09. We are not persuaded that, had defendant's statements to Detective Forbes, the key ring, and the fingerprints been excluded, there is a reasonable likelihood of a more favorable outcome for defendant. As previously explained, the jury was presented with the testimony of Martinez, which was enough for the jury to convict defendant. Therefore, even if defendant could meet the first two prongs of the plain error test, demonstrating (1) that the trial court erroneously admitted defendant's statements, the key ring, and the fingerprints; and (2) that these errors should have been obvious to the trial court, defendant cannot meet the third requirement because he has not shown how the admission of this evidence was sufficiently harmful.[2]

## III. ADMISSION OF BUS PASS

¶ 19 Admission of the bus pass into evidence, having been objected to at trial, presents a different analysis. At trial, a Utah student bus pass for the month of August 1997, which was found in defendant's jacket pocket at the time of his arrest, was admitted into evidence over defendant's objection.

¶ 20 On the assumption that no objection was made at trial, defendant urges this court to review the admission of the bus pass for ineffective assistance of counsel and for plain error. However, because our review of the record discloses that trial counsel did in fact object to the admission of the bus pass, we review the trial court's ruling for correctness.

¶ 21 We conclude that the trial court did not err in admitting the bus pass into evidence. The bus pass was found in defendant's pocket at the time of his arrest. Detective Forbes identified it and it was admitted into evidence through his testimony. Trial counsel objected to the bus pass on the grounds that it was hearsay and the trial court correctly overruled the objection. There was no basis, hearsay or otherwise, on which to prevent the bus pass from being admitted into evidence.

## IV. JURY INSTRUCTION

¶ 22 Defendant also argues that the trial court erred in not providing the jury with an instruction that explained that mere presence at the scene of the crime is not a sufficient basis upon which to convict defendant. However, defendant did not object to the trial court's failure to give the instruction. Under rule 19 of the Utah Rules of Criminal Procedure, "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury is instructed...." Utah R.Crim. P. 19(c). However, notwithstanding a party's failure to object, "error may be assigned to instructions in order to avoid a manifest injustice." *Id.*

---

failure to object to the introduction of the Utah bus pass found on defendant at the time of his arrest. However, as the trial record reveals, defense counsel did object to the introduction of the Utah bus pass and was overruled by the trial court.

2. Again, for clarity, we also note that defendant has failed to demonstrate that the alleged errors were in fact errors of law, much less that they were obvious to the trial court.

■ ¶ 23 The trial court's failure to give the "mere presence" instruction to the jury in this case did not result in manifest injustice. Defendant's theory of the case was that he was not in Salt Lake City at the time the crime occurred. There was nothing before the jury to support the giving of this instruction and no manifest injustice has occurred as a result of the trial court's refusal to do so.

■ ¶ 24 Along the same line, defendant argues that the trial court committed error in failing to respond differently to a question submitted by the jury to the court during deliberations. The jury asked, "in reference to inst. # 19. # 1. If I am at the scene of a crime & watch it take place—do I cause the crime? Am I guilty of the crime I watch?" The trial court discussed the question with counsel, then replied in writing, "Your question, when discussed between the court & counsel, is sufficiently ambiguous that you must rely on your combined judgment in interpreting instruction # 19."

¶ 25 Instruction 19, as given by the trial court, told the jury that it could find defendant guilty of murder only if it found beyond a reasonable doubt each of the following elements:

> 1. That on or about the 25th day of August, 1997, in Salt Lake County, State of Utah, the defendant, Hilario Medina, caused the death of Edward Livsey; and
> 2. That said defendant then and there did so: (a) intentionally or knowingly; or (b) intending to cause serious bodily injury to another, he committed an act clearly dangerous to human life, which act caused the death of Edward Livsey; or (c) acting under circumstances evidencing a depraved indifference to human life, he knowingly engaged in conduct which created a grave risk of death to another and which conduct caused the death of Edward Livsey; and
> 3. That said defendant then and there did so unlawfully.

¶ 26 Although defendant argued to the jury that he had not been in Salt Lake City at the time of the murder, he did suggest in argument that perhaps Martinez, the state's eyewitness, had committed the crime, or was covering for some unidentified third party. However, there was no evidence before the jury from which it could have found either to be true. It was not error for the trial court to respond as it did to the jury's question. As with the mere presence instruction requested by the defendant, there was no evidence upon which the jury could have based a decision that defendant had been merely present and observed another commit the crime. Moreover, as posed, the jury's question was indeed ambiguous. One who encourages or facilitates a crime may well be criminally liable although he or she may only be present at the scene and watch the crime committed. One may or may not be guilty of a crime one observes. When considering the language of instruction 19 as a whole, the trial court was correct in referring the jury back to the full instruction as it did.

## V. CUMULATIVE ERROR

■ ¶ 27 Finally, defendant argues that his conviction should be reversed under the cumulative error doctrine. Under the cumulative error doctrine, we will reverse a conviction only if "the cumulative effect of the several errors undermines our confidence . . . that a fair trial was had." *State v. Kohl,* 2000 UT 35, ¶ 25, 999 P.2d 7 (citations omitted). Although defendant asserts that a number of errors were committed at trial, we find none, and therefore there is no cumulative error.

## CONCLUSION

¶ 28 Defendant's trial counsel did not provide ineffective assistance of counsel in adopting a strategy whereby defendant's explanation of what happened would be admitted through Detective Forbes's testimony. Similarly, trial counsel did not provide ineffective assistance for stipulating to the admissibility of the key ring and fingerprint evidence. The trial court did not commit plain error in admitting Detective Forbes's testimony and the physical evidence. Furthermore, the trial court properly admitted the bus pass into evidence, and the trial court was correct in refusing to provide the "mere presence" jury instruction.

¶ 29 Defendant's convictions are affirmed.

¶ 30 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice DURRANT concur in Justice WILKINS' opinion.