2002 UT App 426

**STATE of Utah, Plaintiff and Appellee,**

v.

**Richard Leroy HOLBERT, Defendant and Appellant.**

**No. 20010147–CA.**

Court of Appeals of Utah.

Dec. 12, 2002.

Rehearing Granted Dec. 11, 2002.

Sharon S. Sipes, Ogden, for Appellant

Mark L. Shurtleff, Attorney General, and Jeanne B. Inouye, Assistant Attorney General, Salt Lake City, for Appellee.

Before BILLINGS, Associate P.J., and DAVIS, and ORME, JJ.

## AMENDED OPINION [1]

DAVIS, Judge:

¶ 1 Defendant Richard L. Holbert (Defendant) appeals his conviction of aggravated kidnaping, a first degree felony, in violation of Utah Code Ann. § 76-5-302 (1999). We affirm.

## BACKGROUND [2]

¶ 2 Suann Palmer (Wife) and Defendant were married for over eleven years and had five children together. Defendant and Wife had not been "getting along very well." Be-

cause of a protective order, Defendant was not allowed to go to the family home. Despite the order, Wife and the children mainly stayed at Wife's parents' home.

¶ 3 On August 12, 1999, Wife and the children returned to the family home. Wife was speaking with a friend on the telephone when one of the children announced that Defendant was at the house. Wife told her friend that Defendant was there and to "come now."

¶ 4 Defendant told Wife he was at the house to get his bowling ball. Wife asked Defendant to wait at the front door while she retrieved the ball. Instead, Defendant shoved Wife into the house, locked the door, pulled a gun from his waistband, and pointed the gun at Wife's head. Wife ran to the back door of the house but Defendant slammed the door shut as Wife was about to open it. As Wife then ran for the front door, Defendant grabbed her and threw her into the bedroom. Defendant shut the bedroom door and kept the gun pointed at Wife's head. At this time, Defendant said, "You want a divorce? You are going to die. I'm going to kill you." Wife told Defendant that she did not want a divorce and wanted the marriage to work.

¶ 5 Defendant then became distracted by the children screaming and ringing the doorbell. Wife again pleaded with Defendant that they could take the children and "leave the state." Defendant opened the bedroom door, walked to the front door and unlocked it, placed the gun back in his waistband, and asked Wife to defend him when police arrived. While exiting the home, the friend with whom Wife had been speaking on the telephone arrived. Defendant left through the backyard.

¶ 6 During the incident, the children went to a neighbor's house "screaming and crying." One of the children told the neighbor that Defendant had locked the children out of the house and was hurting Wife. The neighbor then called the police. While on the

---

**1.** This Amended Opinion replaces the Court's original Opinion in this case, Case No. 20010147 CA, 2002 UT App 364, issued November 7, 2002.

**2.** Facts are viewed in a light most favorable to the jury verdict and are recited accordingly. *See State v. Loose*, 2000 UT 11, ¶ 2, 994 P.2d 1237.

phone, the neighbor witnessed Wife running and screaming, "He's got a gun."

¶ 7 Later that day, Defendant left several messages on Wife's answering machine. The messages were retrieved and recorded the following day by Detective Danielle Croyle, an investigator for the Domestic Violence Unit in the Ogden City Police Department. Throughout the messages, Defendant repeatedly stated that he wanted to speak with Wife "one more time" to "tell her goodbye." At one point, he stated that the day's incident was intended "to show [Wife] how sad and mad and frustrated" he was. He also frequently implied that he was going to kill himself.

¶ 8 Subsequent to the incident, Defendant "just left [his] apartment" and stopped paying rent at the Cherry Creek Apartments complex, where he was also employed in maintenance. He left written notice with the landlord that he was going "to move out." However, neither Defendant nor the landlord could recall specifically what the notice stated.

¶ 9 After a number of days in which Defendant had not been seen, the landlord posted an abandonment notice on the apartment door. Once the apartment was deemed abandoned, the landlord allowed Detective Croyle to enter the apartment and look through Defendant's remaining belongings. During the search, Detective Croyle viewed the telephone numbers listed in Defendant's caller I.D. system. The last call from Wife was dated August 3, 1999.

¶ 10 Forty-six days after the August 12, 1999 incident, Defendant was located and placed under arrest. During a custodial search, the officer found a small revolver in Defendant's belongings.

¶ 11 Although charges were initially filed against Defendant on August 12, 1999, the case was dismissed so that federal charges could be pursued. However, on May 5, 2000, the State charged Defendant with aggravated assault, a third degree felony, and aggravated kidnaping, a first degree felony. Prior to trial, the aggravated assault count was dismissed.

¶ 12 At trial, Wife testified to a prior incident on May 18, 1999, during which Defendant and Wife argued about a previous disagreement. During the argument, Wife went to the telephone. Before Wife picked up the telephone, Defendant picked up Wife by the neck and choked her into unconsciousness. Defendant then threw Wife four to five feet into the kitchen. Upon regaining consciousness, Wife realized she was bent over the kitchen table and Defendant was choking her. She blacked out again and awoke a second time on the kitchen floor with Defendant kneeling over her and choking her. Wife "went into survivor mode" and told Defendant, "Please don't kill me, I wanna [sic] make this marriage work." Defendant stopped choking Wife but then "held [her] hostage for an hour and a half." The next day, Wife obtained the protective order, which was later modified.

¶ 13 Defendant objected to Wife's testimony as inadmissible evidence of a prior bad act. The State responded that the evidence was "foundational for the incident that occurred on the 12th of August." The trial judge inquired whether the testimony would show intent or motive. The State then confirmed that the testimony would demonstrate intent, motive, and opportunity. In addition, Defendant objected to the "hostage" remark. The trial court sustained the objection on the basis that the answer was non-responsive.

¶ 14 During cross-examination, Wife was asked about contact with Defendant after the protective order had been issued. Wife responded that after Defendant "went to court and [pleaded] guilty to simple assault," the order was modified to allow mutual consent contact.

¶ 15 Wife further testified that on approximately June 4, 1999, she was staying at the family house with her five children and was awakened at about 3:15 a.m. when she heard someone at the front-room window. She testified that it appeared an instrument was being used to pry open the window. Wife stated she wasn't sure whether Defendant was the person at the window. Defendant objected to Wife's testimony as speculation that Defendant may have been involved in the incident. The trial court overruled the

objection because Wife did not say anything that tied Defendant to the incident and that she was only testifying as to what she had heard.

¶ 16 Detective Croyle also testified to the June 4 incident. She acknowledged that the police had conducted some investigation, including an unsuccessful search for Defendant's vehicle at his apartment complex. However, the police did not have enough physical evidence to prosecute the matter as a protective order violation.

¶ 17 Following the State's case, Defendant filed a motion to dismiss based on one of the original charges—aggravated assault—being subsequently dismissed by the State which, according to Defendant, should have been the primary charge subject to merger. The trial court denied the motion because "there are not two charges. There's only one." The court determined that whether Defendant had been "overcharged" was a matter for the jury and so instructed the jury as to the lesser included offenses of aggravated assault and unlawful detention.

¶ 18 Next, Defendant testified to his version of the events on August 12, 1999. He stated that Wife had called his apartment and invited him to the house because she had "changed her mind about [the] marriage situation." Upon entering the house, Defendant went to the bedroom to search for a copy of the protective order and noticed a gun that he previously purchased for Wife on the dresser. Defendant testified that Wife pulled out the gun and pointed it towards Defendant's chest area. Wife asked Defendant, "Why can't you be just like other guys and just leave?" and stated, "If I gotta [sic] kill [you], I'll kill [you]."

¶ 19 According to Defendant, the children then began banging on the door and ringing the doorbell. As Wife turned to look to the front door, Defendant grabbed the gun and pointed it at Wife for a few seconds. Wife then pleaded with Defendant that they could take the children and leave the state, and also told Defendant that she did not want a divorce and wanted the marriage to work.

¶ 20 Defendant testified that he then placed the gun in his coat pocket. He expressed concern to Wife that she had tricked him and asked Wife to "stick up for [him]." Finally, he left through the backyard because he assumed that he would be in trouble.

¶ 21 During the landlord's testimony concerning Defendant's apartment, Defendant objected to the search by Detective Croyle because there was no search warrant. The trial court determined that the apartment had been returned to the possession of management so Defendant did not have a reasonable expectation of privacy.

¶ 22 Upon conclusion of the trial, the jury was instructed as to the lesser included offenses of aggravated assault and unlawful detention. The jury returned a guilty verdict on the charge of aggravated kidnaping.

¶ 23 Prior to sentencing, Defendant filed a motion to arrest judgment, requesting the court grant a new trial or, in the alternative, enter a conviction for the crime of aggravated assault based on an insufficiency of the evidence argument and the merger doctrine, again contending that Defendant should have been convicted for aggravated assault rather than aggravated kidnaping. The court rejected Defendant's reliance on case law in which a defendant had been convicted of two crimes and ruled that the jury's verdict could not be ignored and that it was of "no legal consequence ... that [Defendant] also could have been charged with the crime of aggravated assault." The court concluded that Defendant had not demonstrated any error or impropriety that affected his rights.

## ISSUES AND STANDARDS OF REVIEW

¶ 24 Defendant raises several issues on appeal. First, Defendant contends that the trial court erred when it allowed Wife to testify about the May 18, 1999 choking incident. "When reviewing a trial court's decision to admit evidence under rule 404(b), we apply an abuse of discretion standard." *State v. Widdison*, 2001 UT 60, ¶ 42, 28 P.3d 1278. In addition, "[w]e review the record to determine whether the admission of [prior] bad acts evidence was 'scrupulously examined' by the trial judge 'in the proper exercise of that discretion.'" *State v. Nelson–*

*Waggoner*, 2000 UT 59,¶ 16, 6 P.3d 1120 (citation omitted).

¶ 25 Second, Defendant argues that the trial court erred in admitting evidence obtained from Defendant's apartment without a search warrant. We review the trial court's findings of fact "deferentially under the clearly erroneous standard, and its conclusions of law are reviewed for correctness with some discretion given to the application of the legal standards to the underlying factual findings." *State v. Loya*, 2001 UT App 3,¶ 6, 18 P.3d 1116.

¶ 26 Third, Defendant claims that he was deprived of the right to effective assistance of counsel when counsel: (1) failed to object to testimony concerning the attempted break-in at the family home and the subsequent investigation, (2) failed to request a curative instruction after Wife testified that Defendant assaulted her and held her "hostage," (3) failed to request a mistrial or curative instruction after Wife mentioned Defendant's prior conviction and other prior bad acts, (4) failed to prepare witnesses to testify on Defendant's behalf, and (5) failed to request a jury instruction on Defendant's theory of self-defense. When an ineffective assistance of counsel claim "is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law." *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct.App. 1998). However, "appellate review of counsel's performance [is] highly deferential." *Id.* (quotations and citation omitted).

¶ 27 Next, Defendant challenges the evidence as insufficient to support a conviction for aggravated kidnaping. "In considering an insufficiency of the evidence claim, this court reviews 'the evidence and all inferences which may reasonably be drawn

from it in the light most favorable to the verdict of the jury.'" *Widdison*, 2001 UT 60 at ¶ 74, 28 P.3d 1278 (citations omitted). "A jury conviction will be reversed for insufficient evidence 'only if the evidence presented at trial is so insufficient that reasonable minds could not have reached the verdict.'" *Id.* (citation omitted).

¶ 28 Finally, Defendant argues that the cumulative effect of errors committed at trial undermines confidence that a fair trial occurred. "Under the cumulative error doctrine, we will reverse only if 'the cumulative effect of the several errors undermines our confidence ... that a fair trial was had.'" *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (ellipsis in original) (citations omitted).

## ANALYSIS

### I. Prior Bad Acts Testimony

¶ 29 Defendant argues that the trial court erred in permitting testimony about the May 18, 1999 incident.[3] Rule 404(b) of the Utah Rules of Evidence prohibits the admission of "[e]vidence of other crimes, wrongs or acts ... to prove the character of a person in order to show action in conformity therewith." Utah R. Evid. 404(b). Evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Evidence of prior bad acts is "admissible under rule 404(b) if the evidence is relevant to a proper, non-character purpose, unless its danger for unfair prejudice and the like substantially outweighs its probative value." *State v. Widdison*, 2001 UT 60,¶ 41, 28 P.3d 1278.

---

3. Defendant suggests that the testimony is inadmissible under rules 608 and 609 of the Utah Rules of Evidence. However, even if the evidence was improperly admitted under either rule 608 or 609, the evidence is admissible as substantive evidence of prior bad acts for proper non-character purposes under rule 404(b). *See State v. O'Neil*, 848 P.2d 694, 701 n. 7 (Utah Ct.App.1993) (noting that trial judge admitted evidence under rules 404(b) and 403 so no consideration of whether evidence was admissible under rule 609 was necessary); *cf. State v. Mor-*

*rell*, 803 P.2d 292, 294 n. 2 (Utah Ct.App.1990) (recognizing that "any error in the admission of a guilty plea under [r]ule 609 was harmless in view of the admissibility of other evidence of the crime under [r]ule 404(b)"). Furthermore, Defendant did not object to the evidence in the context of rules 608 and 609. *See State v. Stevenson*, 884 P.2d 1287, 1292 (Utah Ct.App.1994) (requiring assertion of argument before trial court before raising argument on appeal). Therefore, we decline to engage in further analysis of this argument.

■ ¶ 30 The Utah Supreme Court has established a three-part process for determining the admissibility of prior bad acts evidence. "[T]he trial court must first determine whether the bad acts evidence is being offered for a proper, noncharacter purpose, such as one of those specifically listed in rule 404(b)." *State v. Nelson–Waggoner*, 2000 UT 59,¶ 18, 6 P.3d 1120.

■ ¶ 31 "Second, the court must determine whether the bad acts evidence meets the requirements of rule 402, which permits admission of only relevant evidence."[4] *Id.* at ¶ 19. "Under rule 402, all relevant evidence is admissible except as otherwise provided." *Widdison*, 2001 UT 60 at ¶ 41, 28 P.3d 1278. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R. Evid. 401. Thus, if prior bad acts evidence "tends to prove some fact that is material to the crime charged," it is relevant and admissible under rule 402. *Nelson–Waggoner*, 2000 UT 59 at ¶ 19, 6 P.3d 1120 (quoting *State v. Decorso*, 1999 UT 57,¶ 22, 993 P.2d 837, *cert. denied*, 528 U.S. 1164, 120 S.Ct. 1181, 145 L.Ed.2d 1088 (2000)).

■ ¶ 32 "Finally, the trial court must determine whether the bad acts evidence meets the requirements of rule 403 of the Utah Rules of Evidence." *Id.* at ¶ 20. "Rule 403 excludes relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Widdison*, 2001 UT 60 at ¶ 41, 28 P.3d 1278 (quoting Utah R. Evid. 403). To determine whether prior bad acts evidence is admissible under rule 403, "a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility." *State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988) (quotations and citation omitted).

¶ 33 In this case, we first determine whether the trial court admitted the prior bad acts testimony for a proper, non-character purpose under rule 404(b). *See State v. Fedorowicz*, 2002 UT 67,¶ 27, 52 P.3d 1194. The State argues that Wife's testimony concerning the May 18, 1999 assault is admissible to: (1) demonstrate motive, (2) show intent; (3) provide background and explain Defendant's pattern of behavior, and (4) rebut Defendant's fabrication and justification defenses. Defendant challenges the admission of Wife's testimony as allowing the jury to convict him based on his "presumed bad character rather than his conduct on August 12, 1999."

■ ¶ 34 We hold that the trial court did not abuse its discretion when it permitted Wife's testimony about the May 18 incident under rule 404(b) to show Defendant's intent and motive in committing the charged offense.[5] Clearly, the prior incident of domestic violence that resulted in Wife seeking a protective order and presumably triggered by the parties' experiencing marital discord, tends to show that Defendant would go to any length to get Wife back. Thus, the May 18, 1999 assault demonstrated Defendant's motive to engage in threatening behavior against Wife as a means for coping with the divorce.

4. Rule 404(b) was recently amended to follow the federal rule verbatim. *See* Utah R. Evid. 404(b) advisory committee's note. The amended version deleted a specific provision that evidence admissible under rule 404(b) must meet the requirements of rules 402 and 403. However, despite the absence of such language, under the current version, evidence must still conform with rules 402 and 403 in order to be admissible. *See id.*

5. We do not find it necessary to address the State's arguments that the prior bad acts evidence was admissible to show background or a specific pattern of behavior and to rebut fabrication and justification defenses since we deem that the prior bad acts evidence was properly admissible to show intent and motive, specifically designated permissible non-character purposes under rule 404(b).

¶ 35  In addition, evidence of the prior assault helps prove Defendant's intent to commit aggravated kidnaping. Defendant was charged with aggravated kidnaping, by which a

> person intentionally or knowingly, without authority of law and against the will of the victim, by any means and in any manner, seizes, confines, detains, or transports the victim ... and ... possesses, uses, or threatens to use a dangerous weapon ... with intent ... to inflict bodily injury on or to terrorize the victim or another.

Utah Code Ann. § 76–5–302(1) (1999). Because aggravated kidnaping is a specific intent crime, evidence of the May 18 assault is material thereto. *See State v. Teuscher*, 883 P.2d 922, 926 (Utah Ct.App.1994) (" 'Where specific intent is an element of the crime, the prosecution may introduce evidence of other offenses to establish the element of intent. ...' " (Citation omitted.)); *cf. State v. Morrell*, 803 P.2d 292, 295 (Utah Ct.App. 1990) (noting "[a]dmission of prior bad acts is proper when it tends to prove a contested material element of the crime charged"). Defendant's prior assaultive conduct is material to the element of intent because it shows that Defendant had engaged in violent behavior against Wife on a prior occasion and could easily use the same threatening behavior "to terrorize the victim" in the future. Utah Code Ann. § 76–5–302(1)(b)(iii).

¶ 36  Other courts have allowed evidence of prior acts of domestic violence committed by a defendant against the same victim to prove motive and intent. *See, e.g., Baker v. State*, No. CR–95–0292, 2001 Ala.Crim.App. LEXIS 7, at *113, 2001 WL 32832 (Jan. 12, 2001) (admitting evidence of collateral offenses to prove motive and intent); *People v. Linkenauger*, 32 Cal.App.4th 1603, 38 Cal. Rptr.2d 868, 872 (1995) (restating rule that evidence of prior quarrels and making of threats is admissible to show motive and state of mind); *State v. Gibbons*, 256 Kan. 951, 889 P.2d 772, 780 (1995) (noting evidence of prior physical abuse of spouse is admissible to prove motive or intent); *State v. Jacobs*, 939 S.W.2d 7, 10 (Mo.Ct.App.1997) (concluding that evidence of prior domestic abuse tended to establish intent and motive for charged crimes); *People v. Hines*, 260 A.D.2d 646, 690 N.Y.S.2d 66, 67 (N.Y.App. Div.1999) (permitting evidence of prior domestic incidents to establish defendant's motive); *State v. Johnson*, 73 Ohio Misc.2d 1, 3, 657 N.E.2d 383, 384 (Hamilton Co. Mun. Ct.1994) (holding prior bad acts by defendant against same victim admissible in domestic violence cases to prove intent and motive under rule 404(b)); *State v. Laible*, 594 N.W.2d 328, 335 (S.D.1999) ("When an accused had a close relationship with the victim, prior aggression, threats or abusive treatment of the same victim by the same perpetrator are admissible when offered on relevant issues under [r]ule 404(b).").

¶ 37  Next, we consider whether Wife's testimony was relevant under rule 402. *See Fedorowicz*, 2002 UT 67 at ¶ 32, 52 P.3d 1194. As previously mentioned, the prior bad acts evidence is relevant to prove the Defendant's specific intent "to inflict bodily injury on or to terrorize [Wife]." Utah Code Ann. § 76–5–302(1)(b)(iii). In addition, the May 18, 1999 choking incident is relevant to refute Defendant's claim that Wife was the perpetrator in the August 12, 1999 episode. Thus, evidence of the prior assault tended to make Wife's version of the events on August 12, 1999, more probable than without the evidence. *See* Utah R. Evid. 401 (defining relevant evidence). Because the evidence is material to an element of the charged offense and tends to rebut Defendant's allegations that Wife initially pointed the gun at him, the trial court did not abuse its discretion in admitting the evidence.

¶ 38  The final step in admitting prior bad acts testimony requires the trial court to determine whether the evidence is admissible under rule 403.[6] *See State v.*

---

6. Although the trial judge did not expressly engage in a scrupulous examination of the evidence by outlining the evidence under each step required by rule 404(b) of the Utah Rules of Evidence, including an application of the *Shickles* factors to satisfy the rule 403 requirement, the court did inquire into whether the evidence was admissible for the proper, non-character purposes of motive and intent. *See State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988). Considering that the trial court did not strike the testimony or revisit the matter after the State confirmed that,

*Bluff,* 2002 UT 66,¶ 59, 52 P.3d 1210. Defendant contends that Wife's description of the assault on May 18, 1999, had an "inherently prejudicial effect [that] far outweighed any minimal probative value to the incident three months later." In applying the *Shickles* factors to this case, we conclude that Wife's testimony about the May 18, 1999 assault was more probative than prejudicial.

¶ 39 First, there is strong evidence that the May 18, 1999 assault occurred. As a result of the incident, Wife obtained a protective order against Defendant. Also, Defendant does not refute that the episode occurred, only that testimony concerning the event should have been excluded.

¶ 40 Second, the May 18 assault is similar to the August 12 incident. Generally, each incident was a form of domestic violence. Although the second event involved a firearm, both involved life-threatening aggression perpetrated by Defendant against Wife. Also, in each incident, Defendant prevented Wife from having access to others by telephone or by exiting the home. Furthermore, in order to prevent further violence in both instances, Wife told Defendant that she wanted the marriage to work.

¶ 41 Third, the time that lapsed between the events was less than three months. Thus, the interval of time between the choking incident and the offense at issue was minimal.

¶ 42 Next, the need for the evidence is significant because the prior assault helps demonstrate a pattern of domestic violence that goes to prove the specific intent element of intending to inflict injury or to terrorize. Without the evidence, the jurors would be left to resolve a "contest of credibility between [D]efendant and [Wife]." *Nelson–Waggoner,* 2000 UT 59 at ¶ 30, 6 P.3d 1120. The

evidence assisted the jurors in determining whose description of events was more or less probable. Thus, the evidence was necessary.

¶ 43 Further, without evidence of the prior domestic violence episode on May 18, there would be an absence of alternative proof to support the aggravated kidnaping charge since the only direct evidence presented concerning the August 12, 1999 incident was Wife's testimony and Defendant's testimony. There was no other direct evidence that the incident inside the home occurred as described by either party. Also, there were no eyewitnesses to the offense besides the parties themselves.

¶ 44 Finally, Wife's testimony would not rouse the jury to overmastering hostility. The evidence concerning the May 18 assault was "no worse than the evidence" of the August 12, 1999 incident that was presented to the jury. *Widdison,* 2001 UT 60 at ¶ 52, 28 P.3d 1278. In fact, Wife's testimony about the event helped provide an overall context of domestic abuse that would give foundation for the August 12, 1999 incident and that would explain the protective order and the limitations established by the order. There was nothing in Wife's testimony about the May 18, 1999 assault that would have caused the jury to lose concentration on the aggravated kidnaping offense.

¶ 45 Upon applying the *Shickles* factors to the facts of this case, we conclude that the trial court did not abuse its discretion in permitting Wife's testimony since the probative value of the evidence was not "substantially outweighed by the danger of unfair prejudice." Utah R. Evid. 403.

¶ 46 In conclusion, the trial court did not abuse its discretion in allowing Wife to testify about the assault that occurred on May 18, 1999 under rule 404(b) because the evidence

upon proceeding, the testimony would be admissible prior bad acts evidence, the testimony satisfied the requirements of rule 404(b). *See State v. Nelson–Waggoner,* 2000 UT 59,¶ 23 n. 8, 6 P.3d 1120 (noting that trial court did not make specific finding that evidence was admissible under final step in 404(b) analysis but inference follows from fact that evidence was ruled admissible). Thus, because Defendant neither objected to nor challenges whether the trial court "scrupulously examined" the evidence, *State v. Decorso,* 1999

UT 57,¶ 18, 993 P.2d 837, and because the State proceeded, after objection, to show that the testimony about the assault was offered for a proper, non-character purpose, the trial court engaged in a sufficiently scrupulous examination of the evidence.

Nevertheless, we encourage trial courts to conduct a complete and thorough application of the three-step procedure as set forth by the Utah Supreme Court and as followed here.

was offered for the proper, non-character purposes of intent and motive, was relevant, and was more probative than prejudicial.

## II. Abandonment

¶ 47 Defendant contends that the trial court erred when it admitted testimony concerning the telephone numbers retrieved from Defendant's caller I.D. system inside Defendant's apartment because Detective Croyle did not have a search warrant. Leased or rented premises are protected against unreasonable searches and seizures. *See State v. Kent*, 20 Utah 2d 1, 432 P.2d 64, 66 (1967). However, " '[w]hen individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had.' " *State v. Rowe*, 806 P.2d 730, 736 (Utah Ct.App.1991) (citations omitted), *rev'd on other grounds*, 850 P.2d 427 (Utah 1992); *see also* 68 Am.Jur.2d *Searches and Seizures* § 23 (2002) (stating an individual "may relinquish his or her reasonable expectation of privacy in a rented property, and thus lose the right to challenge a search of the premises, by abandoning the property"). Thus, a person who has voluntarily abandoned property "lacks standing to object to a search or seizure of it." *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750, 764 (1984).

¶ 48 Under a search and seizure analysis,[7] whether abandonment has occurred is "primarily a factual question of intent to voluntarily relinquish a reasonable expectation of privacy, which may be inferred from 'words spoken, acts done, and other objective facts.' " *Rowe*, 806 P.2d at 736 (citation omitted). Thus, an individual "does not have a reasonable expectation of privacy in a rented apartment, so as to be entitled to challenge a warrantless search of the apartment, when his or her acts and intent indicate that he or she has abandoned the premises." 68 Am.Jur.2d *Searches and Seizures* § 23 (2002).

¶ 49 Here, Defendant left written notice with his landlord that he would be leaving his job and/or apartment.[8] Defendant had ceased performing maintenance duties and stopped paying rent for the apartment. Also, Defendant had not been seen for several days. Thus, the landlord followed established procedures to deem the apartment abandoned, i.e., posting notice, leaving the notice for a few days. Most importantly, Defendant testified that he "just left [the] apartment" by giving the landlord "notice to move out" and that he no longer paid rent because he "wasn't there."

¶ 50 Although no Utah case law specifically addresses the abandonment of leased property, other courts have determined that abandonment occurred in the search and seizure context under similar factual circumstances. *See Baggett v. State*, 254 Ark. 553, 494 S.W.2d 717, 720 (1973) (concluding there was abandonment based partly on defendant turning over apartment keys and terminating employment with property owner); *People v. Urfer*, 274 Cal.App.2d 307, 310, 79 Cal.Rptr. 60 (Cal.Ct.App.1969) (determining apartment abandoned, although furniture and belongings remained, when defendant had not used apartment for some time); *State v. Madera*, 206 Mont. 140, 670 P.2d 552, 557 (1983) (holding abandonment occurred when there was no response to knock, rent was unpaid, key

7. Defendant's reference to Utah Code Ann. § 78–36–12.3 (1996), which defines abandonment in the context of forcible entry and detainer, is not applicable to this case. *See id.* (presuming abandonment when tenant has not notified landlord of absence, fails to pay rent, and there is no evidence that tenant is occupying premises). First, whether Defendant abandoned the apartment, and any reasonable expectation of privacy in it, so that a warrantless search could be properly conducted is a matter for search and seizure analysis. *See Bloodworth v. State*, 233 Ga. 589, 212 S.E.2d 774, 776 (1975) (stating question of abandonment for search and seizure purposes does not turn on property concepts but on whether reasonable expectation of privacy in

premises has been relinquished). Second, Defendant does not challenge the legal procedures used by the landlord for deeming the apartment abandoned for occupation or rental purposes.

8. The note is not included in the record and, thus, the specific wording remains a mystery. However, Defendant testified that he gave written notice that he was leaving. He further testified that his rent had been paid "until I gave notice to move out." The landlord testified that she was given a written note that Defendant was quitting his maintenance job but could not recall whether the note stated that Defendant would no longer be living at the apartment.

was inside apartment, and there was no evidence that defendant returned to premises after offense occurred); *State v. Clark*, 105 N.M. 10, 727 P.2d 949, 952 (N.M.Ct.App. 1986) (concluding abandonment occurred when rent was unpaid, eviction notice was posted, landlord heard defendant was incarcerated, and arrangements were made with defendant's sister to remove possessions); *see generally State v. Brauch*, 133 Idaho 215, 220, 984 P.2d 703, 708 (1999) (noting indicators of abandonment to include nonpayment of rent; removal of furniture, clothes, etc.; nonpayment or disconnection of utilities; statements to landlords or neighbors; and other acts inconsistent with tenant's control or occupation of premises).

¶ 51   We conclude that Defendant's actions in failing to pay rent, being absent from the premises, and providing formal notice to the landlord that he was to move and/or terminate his employment demonstrated his intent to abandon the apartment. Thus, Defendant relinquished any expectation of privacy in the premises and property therein. Therefore, the trial court did not err when it ruled that Defendant had no reasonable expectation of privacy in the apartment.

### III.   Ineffective Assistance of Counsel

¶ 52   Defendant argues that he was deprived of the right to effective assistance of counsel because counsel (1) failed to object to testimony concerning the attempted break-in, (2) failed to request a curative instruction after Wife testified that Defendant has assaulted her and held her "hostage," (3) failed to request a mistrial or curative instruction after Wife mentioned during her testimony that Defendant had previously pleaded guilty to assault, (4) failed to prepare witnesses for trial, and (5) failed to request a self-defense jury instruction.

¶ 53   The Supreme Court of the United States recognizes " 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (citation omitted). In order to succeed on an ineffective assistance of counsel claim, Defendant must show (1) trial counsel's performance was deficient by falling below an objective standard of reasonableness, and (2) trial counsel's deficient performance prejudiced Defendant by depriving him of a fair trial. *See id.* at 687, 104 S.Ct. 2052; *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct.App.1998). "If a defendant fails to establish either of the two parts of the *Strickland* test, counsel's assistance was constitutionally sufficient, and we need not address the other part of the test." *State v. Medina–Juarez*, 2001 UT 79,¶ 14, 34 P.3d 187.

¶ 54   "In reviewing an alleged deficiency in counsel's trial performance, we must indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Bryant*, 965 P.2d at 542 (internal quotations and citation omitted). Defendant "must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations and citation omitted); *State v. Maestas*, 1999 UT 32,¶ 20, 984 P.2d 376 (stating that trial counsel is given "wide latitude in making tactical decisions"); *see also State v. Litherland*, 2000 UT 76,¶ 25, 12 P.3d 92 (noting presumption may be rebutted by showing counsel was inattentive, juror was biased, or counsel's choice was not justifiable). Thus, " '[i]f a rational basis for counsel's performance can be articulated, [the court] will assume counsel acted competently.' " *Bryant*, 965 P.2d at 542 (alterations in original) (citation omitted).

¶ 55   To demonstrate prejudice, "[D]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. "A reasonable probability is that which is sufficient to undermine the confidence in the reliability of the outcome." *State v. Tyler*, 850 P.2d 1250, 1258 (Utah 1993).

¶ 56   First, Defendant contends that trial counsel should have objected to testimony concerning the June 4, 1999 attempted break-in in which police lacked evidence to prosecute the matter. Actually, defense counsel objected to the testimony as speculative when Wife provided her account of the

incident, but was overruled. Defense counsel did not object when Detective Croyle was asked about the incident.

¶ 57 Even if trial counsel should have objected to Detective Croyle's testimony concerning the attempted break-in—a doubtful proposition given the court's ruling on the same objection when previously made—Defendant's claim fails under the prejudice prong. *See State v. Germonto*, 868 P.2d 50, 62 (Utah 1993). Neither Wife nor Detective Croyle named Defendant as the person that committed the attempted break-in. Wife specifically stated that she wasn't sure whether Defendant was the person at the window. Also, Detective Croyle noted that, although there was speculation, there was "no proof ... of who did it." Because Defendant does not demonstrate that a different result at trial would have occurred absent such testimony, Defendant has not satisfied the prejudice prong under *Strickland*.

¶ 58 Second, Defendant argues that trial counsel was ineffective for failing to request a curative instruction when Wife claimed that Defendant held her "hostage" after choking her on May 18, 1999. If the "conceivable tactical bas[e]s for defense counsel's actions are apparent," Defendant has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, [and] we must assume defense counsel acted competently." *Bryant*, 965 P.2d at 543–44 (first alteration in original) (internal quotations and citations omitted).

¶ 59 Here, it is entirely possible that trial counsel declined to request a curative instruction so as not to further emphasize the remark. Such a strategy becomes more apparent because, during cross-examination, Defendant did not request the same remark be stricken when Wife testified that the protective order against Defendant did not mention Defendant "holding [her] hostage." Thus, trial counsel may not have requested a curative instruction as a tactical matter. Given this sound basis for not requesting a curative instruction, Defendant has not overcome the burden that trial counsel was ineffective.

¶ 60 Third, Defendant challenges the assistance of trial counsel as ineffective because counsel failed to request a mistrial or curative instruction after Wife testified that Defendant had previously pleaded guilty to assault.

¶ 61 Again, trial counsel may have deliberately declined to request a curative instruction as a tactical decision. It is reasonable that counsel did not want the jury to take special notice of the testimony. Thus, there is a conceivable tactical basis for counsel's conduct and Defendant has not shown sufficient evidence to overcome the presumption of the reasonableness of trial counsel's choice. *See State v. Morrell*, 803 P.2d 292, 294 n. 2 (Utah Ct.App.1990) (noting error in admission of evidence under rule 609 would be harmless because evidence was admissible under rule 404(b)).

¶ 62 Even if trial counsel erred by failing to request a curative instruction or a mistrial, Defendant has not demonstrated that he was prejudiced and that a different result would have occurred but for Wife's testimony about the prior plea. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

¶ 63 Fourth, Defendant argues that trial counsel failed to prepare witnesses for trial. Defendant points out that one witness had to read material to refresh her memory, one witness had her memory refreshed just prior to her testimony, and one witness could not recall exactly when Defendant worked for him and did not have time to research employment records since he was called "at the spur of the moment." However, Defendant does not offer any evidence of how these witnesses would have testified if trial counsel had prepared them. Because there is no indication that the trial outcome would have been different, Defendant fails to show that he suffered prejudice as a result of trial counsel's actions. *See id.*

¶ 64 Finally, Defendant claims that trial counsel was ineffective for failing to request a jury instruction on self-defense. A self-defense instruction is appropriate if there is evidence that provides some reasonable basis that an offense was committed in

self-defense. *See State v. Garcia*, 2001 UT App 19,¶ 8, 18 P.3d 1123. In this case, trial counsel could have justifiably determined that there was no reasonable basis for a self-defense instruction. Even if trial counsel should have requested a self-defense instruction, Defendant has not demonstrated prejudice by showing how the outcome of the case would have been different if the instruction had been given. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Therefore, trial counsel was not ineffective for failing to request a self-defense instruction.

¶ 65 Because Defendant has failed to demonstrate either trial counsel's deficiency under an objective reasonableness standard or that he suffered prejudice in that a different outcome at trial would have resulted but for trial counsel's performance, we conclude that Defendant was provided effective assistance of counsel.

### IV. Insufficiency of the Evidence

¶ 66 Defendant argues that the evidence at trial was insufficient to support a conviction for aggravated kidnaping. However, the primary focus of Defendant's argument, which is somewhat mischaracterized as an insufficiency claim, is that the aggravated assault charge should have been the host crime in which aggravated kidnaping merges.

¶ 67 We decline to engage in a merger analysis because Defendant did not object to the aggravated assault charge as a lesser included offense.[9] As a lesser included offense, the aggravated assault becomes the predicate offense to the greater crime of aggravated kidnaping. Thus, Defendant is not entitled to the benefit of having aggravated assault be a lesser included offense and then, upon proof of the greater crime, characterize the lesser charge as a host crime to which the greater offense is merged. Because the jury convicted upon the greater offense of aggravated kidnaping, the aggravated assault charge is no longer at issue. *See State v. Shaffer*, 725 P.2d 1301, 1313 (Utah 1986) ("If the greater crime is proven, then the lesser crime merges into it."). Therefore, by

accepting aggravated assault as a lesser included offense, Defendant has waived any application of the merger doctrine.

¶ 68 Because "we assume that the jury believed the evidence supporting the verdict," *State v. Brown*, 948 P.2d 337, 343–44 (Utah 1997), and Defendant neither challenges the level of evidence offered to prove each of the aggravated kidnaping elements nor the basis of the jury verdict, we conclude that the jury was not unreasonable in finding Defendant guilty of aggravated kidnaping.

### V. Cumulative Error

¶ 69 Defendant argues that the existence of several errors committed at trial undermines confidence that Defendant received a fair trial. After review of Defendant's claims and the record, we conclude that no prejudicial error occurred at trial. Therefore, "there is no cumulative error." *State v. Medina–Juarez*, 2001 UT 79,¶ 27, 34 P.3d 187.

### CONCLUSION

¶ 70 We conclude that the trial court did not abuse its discretion in permitting Wife to testify about a prior assault under rule 404(b). Also, the trial court did not err when it found a proper warrantless search because Defendant had abandoned his apartment. Defendant was not deprived of his right to effective assistance of counsel and there was sufficient evidence to support his conviction for aggravated kidnaping, which was not subject to merger. Finally, because there were no errors at trial, the cumulative error doctrine is inapplicable.

¶ 71 I CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge.

ORME, Judge (concurring in the result in part):

¶ 72 There was no real dispute in this case concerning Defendant's intent. Defendant did not claim he detained the victim with a dangerous weapon for some purpose

---

9. Because there is no challenge to aggravated assault being a lesser included offense, it is not necessary to review whether aggravated assault is in fact a lesser included offense to aggravated kidnaping.

other than to terrorize her. (Had he done so, evidence of the prior incident would be very telling indeed.) On the contrary, he claimed that she had the gun and he merely removed it to avoid a dangerous confrontation. Evidence of the prior incident of his serious aggression toward the victim compellingly undercuts the credibility of this contention. Thus, for the reasons more fully set forth in Judge Thorne's opinion and my opinion in *State v. Bradley,* 2002 UT App 348, 57 P.3d 1139, I believe the sounder basis on which to premise admission of the prior bad act evidence was to refute Defendant's fabrication and justification defenses.

¶ 73 I also concur only in the result of Section II of the opinion. I find it wholly unnecessary to reach the issue of Defendant's claimed abandonment of his apartment, as it is clear that admission of the data from his "caller i.d." device was completely inconsequential to his conviction and, thus, harmless beyond a reasonable doubt.

¶ 74 I concur in the balance of the court's opinion.