**2015 UT App 109**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
DAVID DEVOY CARTER,
Defendant and Appellant.

Memorandum Decision
No. 20130897-CA
Filed April 30, 2015

Fifth District Court, St. George Department
The Honorable John J. Walton
No. 121501442

Gary G. Kuhlmann and Nicolas D. Turner, Attorneys
for Appellant

Sean D. Reyes and Brett J. DelPorto, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES J. FREDERIC VOROS JR. and KATE A. TOOMEY
concurred.

ORME, Judge:

¶1    Defendant David Devoy Carter appeals his sentences for two counts of distributing or arranging to distribute a controlled substance, second degree felonies. *See* Utah Code Ann. § 58-37-8(1)(a)(ii), (b)(i) (LexisNexis 2012). We affirm.

¶2    In 2012, Defendant was charged in two separate cases with one count of distributing methamphetamine in a drug-free zone, first degree felonies.[1] *See id.* § 58-37-8(4)(a)(i)–(xi), (b)(i). Defendant agreed to plead guilty to two counts of distributing or

---

1. The two cases have been consolidated on appeal.

arranging to distribute a controlled substance, in exchange for the State's agreement to drop the drug-free zone enhancements and to not file three pending controlled-buy cases. Under the plea agreements, Defendant was also required to submit to a presentence investigation with Adult Probation and Parole (AP&P).

¶3      At Defendant's plea hearing on December 3, 2012, the district court conducted the usual colloquy before accepting Defendant's guilty pleas. The court reviewed the written plea agreements with Defendant and then asked him, "Is there anything that's been promised to you that [you] didn't get in your plea agreement[s]?" Defendant's then-counsel replied: "Your Honor, I think that there's a recommendation that the State would not be seeking prison time and that upon successful completion of probation that the State would not object to a double 402."[2] Defense counsel also told the court that the State had agreed to release Defendant on his own recognizance.

---

2. Under section 76-3-402 of the Utah Code,

> [i]f the court suspends the execution of the sentence and places the defendant on probation, whether or not the defendant is committed to jail as a condition of probation, the court may enter a judgment of conviction for the next lower degree of offense . . . after the defendant has been successfully discharged from probation . . . .

Utah Code Ann. § 76-3-402(2)(a) (LexisNexis 2012). The statute allows only one reduction absent prosecutorial consent, but with the consent of the prosecutor, an offense may be reduced by two degrees. *See id.* § 76-3-402(3)(a), (b). For example, if a defendant was convicted of a second degree felony and the sentencing court granted the defendant's motion to reduce the charge, the "second degree felony, . . . when reduced, becomes a third degree felony." *State v. Barrett*, 2005 UT 88, ¶ 39, 127 P.3d 682. If

(continued…)

¶4 The original prosecutor who had negotiated the plea agreements with Defendant's counsel was not present at the plea hearing, because he was in another courtroom for a preliminary hearing. The State was instead represented by a substitute prosecutor. The substitute prosecutor told the court that his copies of the plea agreements did not contain those provisions and that the original prosecutor did not tell him about these alleged provisions. The court noted, "That's the understanding of the defense at this point apparently so we do have a record of that if it becomes relevant."

¶5 The court recessed so that the substitute prosecutor could clarify with the original prosecutor what had been promised. When the court reconvened, the substitute prosecutor told the court that the original prosecutor had agreed to Defendant's release on his own recognizance but made no mention of a no-prison recommendation or section 402 reduction. Defense counsel made no inquiry about what the original prosecutor had said concerning the no-prison recommendation or 402 reduction, nor did he interpose any objection to the accuracy of the substitute prosecutor's statements. The district court told Defendant that his two cases had "the potential for two sentences to the prison for one to 15 years" and that "it's also a possibility the sentencing judge would make those consecutive, one after the other."[3] The court asked Defendant if he still wanted to plead guilty, and Defendant replied, "Yes, your Honor." The court accepted Defendant's guilty pleas and ordered that Defendant be "released on recognizance."

---

(…continued)
the prosecutor consented and the court approved, it could be further reduced to a class A misdemeanor.

3. Judge G. Rand Beacham conducted Defendant's plea hearing on December 3, 2012. Judge Beacham retired before Defendant's sentencing hearing on September 5, 2013. Judge John J. Walton sentenced Defendant.

¶6    At Defendant's sentencing hearing nine months later, the original prosecutor was present. The court noted that the State's recommendation was for prison. Defendant's then-counsel did not raise the claimed agreement for a no-prison recommendation but responded as follows: "Yes, your Honor. And I'd like to ask the Court to perhaps consider some jail in lieu of that and let me explain why." Defense counsel then stated that he thought Defendant should be sentenced to jail instead of prison because Defendant knew what he did was wrong, he had come to terms with his guilt, and defense counsel believed that Defendant had "finally turned the corner." The original prosecutor stated that the State was recommending prison based on the facts that Defendant had been to prison before, he had "poor performance on probation," he "didn't show up for his first appointment with AP&P," and he had "prior convictions for similar types of offenses." The court then told Defendant, "[I]n light of all of this or after all of this you committed two different offenses involving distribution of controlled substances. You've left the Court with no reasonable alternatives but to send you to prison." The district court sentenced Defendant to two consecutive terms of imprisonment of one to fifteen years. Defendant appeals.

¶7    Defendant first argues that the State breached the plea agreements by recommending prison time and that the district court erred when it failed to ensure that his expectations regarding the plea agreements were fulfilled. Defendant concedes that this claim was not preserved and seeks review under the plain error exception to the preservation requirement. To establish plain error, an appellant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). "If any one of these requirements is not met, plain error is not established." *Id.* at 1209. Here, we conclude that Defendant has not established plain error.

¶8    First, it is far from clear that an error occurred. *See id.* at 1208. While not dispositive in and of itself, the State's alleged promise not to recommend prison is not mentioned in the

written plea agreements, and Defendant concedes "that the record does not contain an actual affirmation from the State that [it] had promised to not seek prison time in exchange for [his] guilty pleas."[4]

¶9 Nevertheless, Defendant argues that an error occurred because he "entered his pleas with the understanding that the State would not seek prison time, and the trial court was aware of [his] understanding at the time he entered his pleas." Defendant compares his situation to that of the defendant in *State v. Garfield*, 552 P.2d 129 (Utah 1976), and argues that, like the defendant in *Garfield*, he has the right to receive the benefit of his bargain, i.e., "to be sentenced without a State recommendation of prison time." However, in *Garfield*, the record "unequivocally" established that the prosecutor promised to recommend probation in return for the defendant's guilty plea. *Id.* at 130. Here, unlike in the *Garfield* case, there is no record of a promise by the State to refrain from recommending prison time. And as the Utah Supreme Court noted in *State v. Bero*, 645 P.2d 44 (Utah 1982), "[a] 'plea agreement' that was never agreed upon need not be fulfilled." *Id.* at 46. *See also id.* at 47 ("A reasonable belief is not equal to a promise."). Consequently, because there is no evidence that the State ever agreed not to seek prison time, Defendant has not established that an error occurred.

¶10 However, even if we were to agree that an error occurred, Defendant has failed to establish that the error should have been obvious to the district court. *See Dunn*, 850 P.2d at 1208. Again, beyond defense counsel's single assertion at the plea hearing

---

4. Nothing in this decision should be taken to suggest that the *absence* of a particular provision from a written plea agreement conclusively establishes that the parties never agreed to the provision. In this case, there is simply nothing to suggest that the parties ever reached an agreement regarding a no-prison recommendation.

that the State promised not to recommend prison, the record is silent as to whether the State actually promised to refrain from seeking prison time for Defendant. But more importantly, once the question arose at the plea hearing, the district court and counsel took actions to clarify the terms of Defendant's plea agreements. *See Bero*, 645 P.2d at 47 ("The court should understand clearly and make sure the parties understand clearly the terms which they have agreed to before acting upon the [plea] agreement."). After defense counsel mentioned that the State agreed not to seek prison time and that Defendant could be released on his own recognizance, the district court briefly adjourned so that the substitute prosecutor and the original prosecutor could confer to clarify the terms of the plea agreements. When the court reconvened, the substitute prosecutor stated only that the original prosecutor had agreed to Defendant's being released that day on his own recognizance.[5]

_____

5. Defendant also argues that "the mere existence of the State's promise to stipulate to [D]efendant's [own-recognizance] release, indicates that the State had previously agreed not to seek prison time at sentencing." He asserts, "Otherwise, one must ask why the State would bother to stipulate to [Defendant's] release at the time the court accepts his guilty pleas, only to ask that [Defendant] be put back into custody at sentencing?" We think that the answer to Defendant's question is fairly obvious. After the district court acknowledged the State's recommendation that Defendant be released on his own recognizance, the court stated that there was "some kind of a warrant from Cedar City . . . so you'd be transported to Cedar City instead of being released from [the Purgatory Correctional Facility] here, but at least you'd be free to go to Cedar City and do whatever needs to be done up there." Thus, by stipulating to Defendant's release on his own recognizance, the State was presumably furthering its interest in having Defendant respond, as required, to the outstanding warrant in Cedar City.

Contrary to Defendant's assertion, the fact that the State stipulated to Defendant's own-recognizance release does not

(continued…)

The court acknowledged this clarification of the plea agreements on the record, stating: "And [Defendant], the prosecutor has clarified there was an agreement for you to be released on your own recognizance on these cases if you entered a plea." Defense counsel did not object or reassert that the State had additionally promised not to seek prison time. The district court then warned Defendant that his two cases had "the potential for two sentences to the prison for one to 15 years" and that "it's also a possibility the sentencing judge would make those consecutive, one after the other." When the court asked Defendant if he still wanted to plead guilty, Defendant said, "Yes, your Honor." Based on these events, we think that the district court could appropriately conclude that the State had not agreed to the no-prison recommendation defense counsel initially raised. Consequently, the error, if any, was not obvious.

¶11 Defendant cannot demonstrate either that an error occurred or that the error, if any existed, should have been obvious to the district court. Therefore, we conclude that

---

(…continued)

establish that the State had also previously agreed not to seek prison time. It may well be that the parties never reached an agreement before the plea hearing regarding either provision raised by defense counsel. It is possible that the original prosecutor, perhaps realizing the practicality in doing so, agreed to stipulate to Defendant's own-recognizance release only when that possibility was raised by the substitute prosecutor during the short recess in the plea hearing. Moreover, based on the record before us, we think it is possible, given the qualified way in which defense counsel suggested the two provisions and his silence regarding the no-prison recommendation after the court reconvened, that defense counsel realized during the recess that he was thinking about a different case entirely and that the prosecutor never agreed to a no-prison recommendation as part of the plea agreements in this case.

Defendant has not demonstrated plain error.[6] *See Dunn*, 850 P.2d at 1208.

¶12   Defendant, represented by new counsel on appeal, next argues that his trial counsel's performance was constitutionally deficient because he did not object to the State's recommendation that Defendant be sentenced to prison. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. To prove ineffective assistance of counsel, "a defendant must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If a defendant

---

6. In the alternative, Defendant argues that we should consider his claims under the exceptional circumstances exception to the preservation requirement. *See State v. Dunn*, 850 P.2d 1201, 1209 n.3 (Utah 1993). Specifically, he argues that he was prejudiced by the change in judge between the plea hearing at which he entered his guilty pleas and the sentencing hearing. The exceptional circumstances doctrine "is used sparingly, properly reserved for truly exceptional situations . . . involving 'rare procedural anomalies.'" *State v. Irwin*, 924 P.2d 5, 11 (Utah Ct. App. 1996) (quoting *Dunn*, 850 P.2d at 1209 n.3). Utah courts have previously recognized that "two judges, while different persons, constitute a single judicial office." *Gillmor v. Wright*, 850 P.2d 431, 439–40 (Utah 1993) (Orme, J., concurring). *Accord In re R.B.F.S.*, 2012 UT App 132, ¶ 12, 278 P.3d 143. Accordingly, we conclude that the change of judges between the plea and sentencing hearings is not the kind of rare procedural anomaly contemplated by the exceptional-circumstances doctrine and that Defendant was not prejudiced by the reassignment of his case to another judge. This is especially so given that the change of judges was occasioned by the routine occurrence of a retirement and that the first judge specifically warned Defendant of the possibility that his sentence would be exactly the one that was imposed by the second judge.

fails to establish either of the two parts of the *Strickland* test, counsel's assistance was constitutionally sufficient, and we need not address the other part of the test." *State v. Medina-Juarez*, 2001 UT 79, ¶ 14, 34 P.3d 187.

¶13 To satisfy the first part of the *Strickland* test, Defendant must "overcome a strong presumption that [his] trial counsel rendered adequate assistance." *State v. Crosby*, 927 P.2d 638, 644 (Utah 1996). Given this "strong presumption of competence, we need not come to a conclusion that counsel, in fact, had a specific strategy in mind." *State v. Tennyson*, 850 P.2d 461, 468 (Utah Ct. App. 1993). "Instead, we need only articulate some plausible strategic explanation for counsel's behavior." *Id.*

¶14 In this case, there is a plausible explanation for counsel's failure to object to the State's prison recommendation, namely, that the State never promised to refrain from recommending prison time for Defendant. And indeed, there is no evidence of such an agreement by the State. In any event, defense counsel was not required to object to the State's recommendation of prison if such an objection would have been futile. *See State v. Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52. If defense counsel had pursued his objection to the State's prison recommendation, the State would likely have responded that it never agreed not to recommend prison. And the district court would have consulted the written, signed plea agreements, and it would have seen that the agreements said nothing about a promise by the State to not recommend prison. Moreover, both plea agreements stated that "[a]ll the promises, duties, and provisions of the plea agreement . . . are fully contained in this statement." And as previously indicated, after initially sharing his thought "that there's a recommendation that the State would not be seeking prison time," defense counsel may have realized he had that wrong. *See supra* note 5. Thus, defense counsel's failure to make futile and possibly unethical arguments about the no-prison recommendation does not constitute deficient performance.

¶15 There is a "plausible strategic explanation" for defense counsel's failure to object to the State's recommendation of

prison. *See Tennyson*, 850 P.2d at 468. Therefore, Defendant cannot demonstrate that his counsel's performance was deficient under part one of the *Strickland* test. *See* 466 U.S. at 687. Because Defendant has failed to establish part one of the *Strickland* test, "we need not address the [prejudice] part of the test." *Medina-Juarez*, 2001 UT 79, ¶ 14.

¶16   We conclude that Defendant's claim of plain error fails because he cannot demonstrate that an error occurred or that the error, if any, should have been obvious to the district court. In addition, we reject Defendant's argument that he received ineffective assistance of counsel. His sentences are affirmed.

———————