2018 UT App 88

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BRANDON TYLER WHITBECK,
Appellant.

Opinion
No. 20150973-CA
Filed May 17, 2018

Second District Court, Ogden Department
The Honorable W. Brent West
No. 151900201

Samuel P. Newton, Cherise M. Bacalski, and Emily
Adams, Attorneys for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1　Brandon Tyler Whitbeck appeals his convictions of one count of failure to stop or respond at the command of a police officer, a third degree felony, *see* Utah Code Ann. § 41-6a-210 (LexisNexis 2014), and one count of theft by receiving stolen property, a second degree felony, *see id.* § 76-6-408 (2017). On appeal, Whitbeck argues that the trial court exceeded its discretion in admitting prior bad acts evidence under rule 404(b) of the Utah Rules of Evidence and that his trial counsel performed ineffectively by failing to object to the introduction of prejudicial photographs, which depicted him posing while holding a gun. We affirm.

BACKGROUND

¶2    The State charged Whitbeck with failure to stop or respond at the command of a police officer and theft by receiving stolen property, a 2012 GMC Acadia, based on a series of events that occurred in North Ogden in January 2015. At that time, a "high rate of vehicle [burglaries] and vehicle thefts" had been occurring in the Ogden area, and officers from North Ogden and Weber County were working together to identify potential suspects.

¶3    During the night of January 17, and into the early morning of January 18, several vehicle burglaries and thefts occurred in one particular North Ogden neighborhood. As pertinent here, one theft victim reported that his garage had been "ransacked" and that among the items stolen was his wife's vehicle, a charcoal gray 2012 GMC Acadia.

¶4    Two other victims reported vehicle burglaries in the same neighborhood, on the same night. The first victim, whose vehicle was parked approximately six or seven blocks from where the Acadia had been stolen, reported that his vehicle had been broken into and that, although it did not appear that anything had been taken, there was a phone left in the vehicle that was not his. Through a combination of fingerprints lifted from the phone and evidence obtained through a search of the phone, the officers identified the phone as Whitbeck's.

¶5    The second victim, whose vehicle was "approximately two doors away" from where the Acadia had been stolen, reported that his vehicle had been broken into and that his identification card, several watches, and a check written out to him had been stolen from it. On January 21, a wallet containing, among other things, the second victim's identification card and the check, as well as Whitbeck's driver license, was turned in to the Harrisville City Police Department. The officer investigating the wallet and its contents determined that the wallet belonged to Whitbeck, and he notified one of the North Ogden officers

investigating the vehicle burglaries and forwarded to the officer photographs of the wallet's contents.

¶6     After the January 18 events, police identified Whitbeck and a known associate of Whitbeck's, Witness, as the primary suspects of the string of burglaries and thefts. Various officers met to strategize, and each officer was provided photographs— both booking photographs and photographs obtained through social media—of Whitbeck and Witness. The officers were also provided with Witness's address as well as descriptions of the stolen vehicles from the area, including the 2012 GMC Acadia.

¶7     Over the next three days, two investigating officers reported observing Whitbeck driving what appeared to be the stolen Acadia. On January 20, one of the officers, Officer Haney, reported that he had observed two vehicles parked in Witness's driveway. One of them, a gray Chevrolet Aveo, had been reported stolen. The other vehicle was a "dark gray GMC Acadia," and Officer Haney observed a person he later identified as Whitbeck "standing inside the . . . driver's door" of that vehicle. The Acadia did not have a license plate. Officer Haney observed both the Aveo and the Acadia back out of the driveway and drive away from Witness's house.

¶8     The next day, another officer, Officer Huckaby, reported observing Whitbeck driving what he identified as a gray 2012 GMC Acadia in North Ogden. During trial, Officer Huckaby testified that as he was checking out some "hot spots" looking for stolen cars, he observed a gray Acadia pull up to a stop sign. Because Officer Huckaby knew that a gray 2012 Acadia had been reported stolen, he "slowed down," and as the vehicle turned, he observed the driver from a distance of approximately twenty feet. He immediately recognized the driver as Whitbeck from his photographs, which Officer Huckaby had with him in his vehicle at the time. He also observed that the Acadia had no license plate. Officer Huckaby immediately executed a U-turn to "keep an eye on the car," and, because he drove an "unmarked car," he radioed for assistance. Another patrol vehicle responded,

turning on its siren and lights while getting "directly behind" the Acadia. Rather than slowing and stopping, however, Whitbeck "immediately accelerated," ran a stop sign, and proceeded northbound at an "extremely high rate of speed." Although the patrol car initially gave chase, it broke off pursuit for safety reasons.

¶9     A few days later, police recovered the Acadia when a man in Clearfield reported that he suspected that a 2012 GMC Acadia he had received from a friend of Whitbeck's was stolen.

¶10    Before trial, the State filed a notice of intent to introduce rule 404(b) evidence linking Whitbeck to other burglaries that had occurred in the same North Ogden neighborhood on January 18,[1] which Whitbeck opposed. Out of the jury's presence on the day of trial, the court heard argument from both sides on the matter.

¶11    The State argued that it sought to introduce the phone and the wallet as evidence to "corroborate the fact that [Whitbeck] was in the area at the time that the [Acadia] theft actually happened," which the State claimed would "help prove the elements that [Whitbeck] knew or should have known that the [Acadia] was stolen" at the time he possessed it. The State also asserted that Witness was prepared to testify, among other things, that on the night in question, it was his and Whitbeck's "plan" to commit these vehicle burglaries and thefts and that they engaged in this conduct on the night in question at the "general location" from which the Acadia had been stolen.

---

1. Rule 404(b) of the Utah Rules of Evidence provides that, "[o]n request by a defendant in a criminal case, the prosecutor must . . . provide reasonable notice of the general nature of [evidence of the defendant's prior wrongful acts] that the prosecutor intends to offer at trial."

¶12    Whitbeck responded that the phone and wallet evidence were "bits and pieces" the State was trying to present as "one cohesive piece of evidence." He argued that the pieces of evidence did not demonstrate that he was "in possession of anything," even if the items were "all related to a type of crime or a genre of crime." He also asserted that the introduction of the items would be problematic, given that those items were not found on him at the same location and, for example, it was not clear "how the [stolen] identification got into his wallet."

¶13    The court ruled in favor of the State, concluding that the phone and wallet evidence was being offered for a "proper non-character purpose," because it "goes to identify Mr. Whitbeck" as "a person who was involved in" vehicle burglaries and whether "he is the person that [the police] were in fact looking for for this series of crimes that allegedly occurred" in that North Ogden neighborhood. The court recognized that the evidence was prejudicial but determined it was not unfairly so, and the court observed that there was a "need for the evidence" and that the State was "entitled to bring in all the evidence that [it] had that would lead one to believe that the identity of the person that was involved in this crime and inferentially involved in others was Mr. Whitbeck." The court accordingly limited its ruling to permitting the introduction of the phone and the wallet to "tie . . . up with [Witness] to the extent that Mr. Whitbeck was involved in this crime or other crimes," and the court emphasized that the State was not to use the evidence to say that Whitbeck committed "all these other crimes," but rather that the State was limited to using the evidence to identify Whitbeck as a person "who may have been involved in this."

¶14    At trial, Witness testified that he and Whitbeck had been in the North Ogden neighborhood from which the Acadia had been stolen on the night in question and that they were there to generally steal and burglarize vehicles. Witness also testified that the next day Whitbeck had said that he had lost his phone. In addition, Witness testified that on at least two occasions he had observed Whitbeck driving a GMC Acadia—later in the morning

of January 18 when he and Whitbeck reunited, and on the day Officer Haney observed the Acadia in Witness's driveway because Witness was seated in the Acadia as Whitbeck drove it away.

¶15    The State also introduced the wallet and phone evidence to corroborate Witness's testimony about the events of the night in question, arguing that Whitbeck knew the Acadia was stolen because, in part, the evidence demonstrated he was in the North Ogden neighborhood with Witness pursuant to the plan to steal and burglarize vehicles. As to the phone in particular, the State presented evidence recovered from the phone to demonstrate that it belonged to Whitbeck, including fingerprints, text messages, application use, and two photographs depicting Whitbeck posing with a gun. The trial court admitted the photographs into evidence without objection.

¶16    At closing, the State emphasized to the jury that although other vehicle burglaries and thefts had been discussed, the State had not charged Whitbeck with those other vehicle burglaries, and the "only things" the jury was to decide were whether Whitbeck eluded the police officer and "was in possession of a stolen vehicle, the Acadia." "Everything else," the State explained, "was presented [as] background and to identify the person . . . that had the Acadia."

¶17    The jury returned guilty verdicts on both counts. Whitbeck appeals.

ISSUES AND STANDARDS OF REVIEW

¶18    Whitbeck raises two claims of error. First, he argues that the trial court "erroneously allowed the State to present prior bad act evidence that [he] was allegedly involved in two different vehicle burglaries." We review "a trial court's admission of prior bad acts evidence" for an abuse of discretion. *State v. Reece*, 2015 UT 45, ¶ 17, 349 P.3d 712 (quotation simplified).

¶19   Second, Whitbeck argues that his trial counsel performed ineffectively by failing "to object to the introduction of irrelevant and highly prejudicial photographs" recovered from his phone that depicted him holding a gun. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Parkinson*, 2018 UT App 62, ¶ 8 (quotation simplified).

ANALYSIS

I. Prior Bad Acts Evidence

¶20   Whitbeck argues that the trial court erred when it admitted the wallet and phone evidence. He contends that the wallet and phone evidence allowed what was otherwise "a very weak case . . . to be bolstered with a highly improper propensity inference: that because [he] must have been committing multiple vehicle burglaries that evening, he must have committed" the crime of possessing the stolen Acadia.

¶21   Rule 404(b) of the Utah Rules of Evidence regulates the admissibility of evidence of a defendant's prior acts of misconduct. "The rule recognizes the dangers of exposing a jury to evidence of a defendant's acts of prior misconduct," especially "the risk that the jury will infer that the defendant has a reprehensible character, that he probably acted in conformity with it, and that he should be punished for his immoral character in any event." *State v. Thornton*, 2017 UT 9, ¶ 35, 391 P.3d 1016 (quotation simplified). To preclude that inference, the rule provides that "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Utah R. Evid. 404(b)(1).

¶22   "On the other hand, the rule also recognizes that acts of prior misconduct may also sustain an alternative—and entirely

permissible—inference." *Thornton*, 2017 UT 9, ¶ 36. To that end, the rule provides that past misconduct evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Utah R. Evid. 404(b)(2). Past misconduct evidence presented for such a noncharacter purpose will be admissible if it is also relevant under rule 402 and the probative value of the evidence is not substantially outweighed "by the danger of unfair prejudice" under rule 403. *See State v. Reece*, 2015 UT 45, ¶ 57, 349 P.3d 712 (quotation simplified); *see also Thornton*, 2017 UT 9, ¶ 36 (explaining that if "past misconduct evidence is offered for any other purpose— other than to suggest action in conformity with the bad character suggested by his prior bad acts—such evidence is admissible, so long as it satisfies rules 402 and 403" of the Utah Rules of Evidence (quotation simplified)). Thus, the admissibility of prior bad acts evidence turns on a three-part test: the prior bad act evidence "(1) must be offered for a genuine, noncharacter purpose, (2) must be relevant to that noncharacter purpose, and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice." *Reece*, 2015 UT 45, ¶ 57 (quotation simplified).

¶23　Nevertheless, the ultimate question for an appellate court reviewing a trial court's rule 404(b) determination is "whether the district judge made an error in admitting or excluding the evidence in question," not whether we would have decided differently in the first instance. *See Thornton*, 2017 UT 9, ¶¶ 50– 53, 56 (quotation simplified). Our supreme court has reiterated "the deferential standard of review that applies to review of this kind of question," given the trial judge's "better position . . . to assess the avowed basis for evidence of prior misconduct" and to "judge its likely effect in prejudicing or confusing the jury." *Id.* ¶ 56. Consequently, the "question for us is not whether we would have admitted this evidence. It is whether the district judge abused his broad discretion in doing so." *Id.*

¶24   We address each of the three steps below and ultimately conclude that the trial court did not exceed its discretion in admitting the phone and wallet evidence.

A.      Proper Noncharacter Purpose

¶25   First, it was well within the trial court's discretion to conclude that the phone and wallet evidence was submitted for a proper noncharacter purpose. Our supreme court recently recognized in *State v. Lopez*, 2018 UT 5, that rule 404(b) evidence may be admissible for the noncharacter purpose of identity if it supports "an intermediate inference that tie[s] the defendant to the charged crime." *See id.* ¶¶ 44–47. In doing so, the *Lopez* court cited with approval *State v. Reece*, 2015 UT 45, 349 P.3d 712; *State v. Shaffer*, 725 P.2d 1301 (Utah 1986); and *State v. Clark*, 2014 UT App 56, 322 P.3d 761. *See Lopez*, 2018 UT 5, ¶¶ 44–47. In each of those cases, the district court's decisions to admit evidence under rule 404(b) for the noncharacter purpose of identity were affirmed where the evidence was used for the purpose of linking the defendant to the charged crime. *See id.* For example, the supreme court noted that in *Reece* the prior bad acts evidence was admissible because it showed that the defendant "had access to the type of gun investigators determined was likely the murder weapon." *Id.* ¶ 44 (quotation simplified). Similarly, the court observed that in *Shaffer* the prior bad acts evidence that the defendant had stolen a wallet was admissible where the State "used the evidence to show access to the murder weapon because the defendant had used the identification in the stolen wallet to purchase the gun [that had killed the victim] ten days prior to the murder." *Id.* ¶ 45.

¶26   The phone and wallet evidence in the present case was likewise admissible under rule 404(b) because it supported an "intermediate inference of identity" tying Whitbeck to the charged crime. *See id.* ¶ 47. As the trial court noted, the officers were investigating a "total criminal situation" involving multiple vehicle burglaries and thefts in this North Ogden neighborhood. As part of this "total criminal situation," the phone was reported

as being left inside of a vehicle parked six or seven blocks from where the Acadia had been stolen, and the items recovered from Whitbeck's wallet had been reported stolen from a vehicle parked two doors away from the Acadia. The location of the phone and the wallet's contents permit, as the trial court observed, a "legitimate inference" that Whitbeck was in the North Ogden neighborhood during the time frame in which the burglaries occurred and that he had been involved in those burglaries, as testified to by Witness. *See Reece*, 2015 UT 45, ¶¶ 58–63 (concluding that, where the "central issue at trial was the identity of the killer," "evidence linking [the defendant] . . . to the type of gun that investigators had identified as the likely murder weapon" was admissible under rule 404(b) for the "genuine noncharacter purpose of establishing [the defendant] as the murderer"); *Clark*, 2014 UT App 56, ¶¶ 21–22 (concluding that prior bad acts evidence that the defendant had been involved in a previous shooting was admissible for a proper noncharacter purpose of identifying the defendant "as the person who used the same firearm to commit two shootings" where the "identity of the perpetrator was clearly at issue" and where the details of a previous shooting were relevant to show both that the weapon involved in the charged shooting belonged to the defendant and that he was present at the crime scene); *Salt Lake City v. Alires*, 2000 UT App 244, ¶ 13, 9 P.3d 769 (concluding that admission of the facts surrounding the defendant's visit to the victim an hour before making the harassing phone call at issue was proper for an identification purpose, where the facts suggested "a clear factual link between the two incidents" by demonstrating "a course of threatening behavior directed at [the victim]"). Accordingly, the evidence of the phone and the wallet was admitted for a proper noncharacter purpose—identifying Whitbeck as a person involved in the Acadia's theft. *See Lopez*, 2018 UT 5, ¶¶ 44–47.

B.    Relevance

¶27    Next, it was also within the court's discretion to conclude that the phone and wallet evidence was relevant to proving

Whitbeck's identity as a person involved in the Acadia's theft. "Relevant evidence is admissible" unless the Federal or Utah Constitution, a statute, or a rule provides otherwise, Utah R. Evid. 402, and "relevance is a low bar," *State v. Thornton*, 2017 UT 9, ¶ 61, 391 P.3d 1016; *see also Reece*, 2015 UT 45, ¶ 64 (explaining that "any evidence that has even the slightest probative value is relevant under the rules of evidence" (quotation simplified)). "Evidence is relevant if: (a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Utah R. Evid. 401 (emphasis added).

¶28　Here, Whitbeck's identity as a person involved in the Acadia's theft was of central importance to this case—the State was required to prove both that Whitbeck was the person who had received the stolen Acadia and that Whitbeck knew or believed that the Acadia had been stolen at the time he received it. *See* Utah Code Ann. § 76-6-408(1) (LexisNexis 2017) (providing that "a person commits theft if he receives, retains, or disposes of the property of another knowing that it has been stolen, or believing that it probably has been stolen"). The phone and wallet evidence tended to identify Whitbeck as a person involved in the theft of the Acadia because it physically linked him to the North Ogden neighborhood from which the Acadia had been stolen on the night in question. That evidence also inferentially suggested that Whitbeck had been involved in other vehicular burglaries that had been reported in the same area, which increased the likelihood of Whitbeck's involvement in, and knowledge of, the Acadia's theft as a part of the larger crime spree. *See Clark*, 2014 UT App 56, ¶ 22 (concluding that the details of the defendant's involvement in a prior shooting were relevant to identify the defendant as the perpetrator of the shooting at issue where the defendant denied being present at the shooting at issue and the details of the prior shooting tended to identify the defendant "as the person who [had] used the same firearm to commit two shootings"); *Alires*, 2000 UT App 244, ¶¶ 14–15 (concluding that the trial court did not abuse its discretion in concluding the prior bad acts evidence was relevant

where "the identity of the caller [was] a material fact and a necessary element in the State's prosecution" and some of the content from the phone call tended "to prove the identity of the caller").

¶29 In addition, the phone and wallet evidence had some tendency to corroborate Witness's testimony about his and Whitbeck's general plan to steal and burglarize vehicles in the North Ogden neighborhood on the night in question. As defense counsel highlighted in cross-examination, there were some credibility problems with Witness's testimony—Witness admitted that, at the time of the events, he had been heavily involved in drugs and had trouble recalling some of the details. Whatever the failings in Witness's testimony, the phone and wallet provided physical evidence that fairly suggested there was some truth to his narrative. And the overall use of the phone and wallet evidence therefore tended to counterpoint Whitbeck's attempts at trial to draw Witness's credibility into question. *See State v. Holbert*, 2002 UT App 426, ¶ 37, 61 P.3d 291 (indicating that prior bad acts evidence was relevant where it tended to make the complaining witness's "version of the events . . . more probable than without the evidence"); *State v. Van Oostendorp*, 2017 UT App 85, ¶¶ 36–37, 397 P.3d 877 (concluding that prior bad acts evidence at issue was "relevant to rebut [the defendant's] defense").[2]

_____

2. Whitbeck also argues that the State did not lay a sufficient foundation for the admission of the other vehicle burglaries. He argues that the State "did not present evidence as to how the evidence arrived in the various vehicles" and it "never showed [his] actual involvement or culpability in these bad acts" or "create[d] an actual connection between the other vehicle burglaries and [his] supposed theft of the Acadia." *See* Utah R. Evid. 104(b) (providing that "when the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist" and that

(continued…)

C.      Risk of Unfair Prejudice

¶30    Finally, the court did not exceed its discretion in determining that, while use of the phone and wallet evidence was somewhat prejudicial, it was not unfairly so. Rule 403 of the Utah Rules of Evidence provides that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other things, "unfair prejudice." In weighing the probative value and potentially unfair prejudice of evidence under rule 403, trial courts are instructed to "bind [their] analysis to the text of [that] rule." *State v. Lowther*, 2017 UT 34, ¶ 45, 398 P.3d 1032; *see also State v. Cuttler*, 2015 UT 95, ¶ 2, 367 P.3d 981 (stating that "the governing legal standard for evaluating whether evidence satisfies rule 403 is the plain language of the rule, nothing more and nothing less"). This may include some appropriate consideration of what have become known as the *Shickles* factors, but ultimately, courts should consider "those factors that are appropriate given the particular circumstances of the case." *Lowther*, 2017 UT 34, ¶ 45; *Cuttler*, 2015 UT 95, ¶¶ 18–19 (explaining that a court's rule 403 analysis "should not [be] limit[ed]" to or moored "entirely and exclusively" to the *Shickles* factors, and that, if used, the *Shickles* factors should not be applied mechanically).

---

(…continued)
"the court may admit the proposed evidence on the condition that the proof be introduced later"). But the State did not seek admission of the evidence to argue that Whitbeck had, in fact, committed the other burglaries. Instead, it sought to use that evidence to identify Whitbeck as a person with some connection to those crimes. Thus, the only conditions of fact at issue here were the circumstances in which the phone and wallet were recovered and how the identifications of those items as belonging to Whitbeck proceeded. As a result, the phone and wallet evidence does not run afoul of rule 104's requirements.

¶31    Here, the trial court determined that, while the phone and wallet evidence was somewhat prejudicial, it was not unfairly so. The trial court found that the phone and wallet evidence "goes to the identity of Mr. Whitbeck," and it accordingly limited the use of the evidence to that end. Specifically, the court stated that the phone and wallet evidence could be used only to "tie . . . up with [Witness's testimony] . . . that [Whitbeck] was involved in this crime or other crimes" that police were investigating, and it emphasized that the State would not be permitted to use the evidence to argue that Whitbeck committed the other vehicle burglaries and therefore must have committed the charged crimes. In this regard, the court determined that because police were investigating the Acadia's theft as part of a "total criminal situation" involving a "series of crimes," the phone and wallet evidence raised "a legitimate inference or question as to why [Whitbeck's] wallet [was] found where it was found and why [Whitbeck's] phone [was] found where it was found." The court also determined that the State was "entitled to bring in all the evidence that [it] had that would lead one to believe that the identity of the person that was involved in this crime and inferentially involved in others was [Whitbeck]" rather than someone else.

¶32    In so ruling, the court did not exceed its discretion. It is significant that the phone and wallet evidence was not introduced to simply establish that Whitbeck had committed certain specific prior bad acts with some bearing on the case, such as the alleged burglaries associated with those items. Rather, the evidence was introduced to permit the jurors to draw a reasonable inference that Whitbeck had been a person involved in the larger crime spree under investigation, which included the Acadia's theft. Given that there was no direct evidence that Whitbeck had actually stolen the Acadia, the jury was required to draw such an inference to convict Whitbeck of a crime that depended on his knowledge or belief that the Acadia had been stolen. *Cf. Thornton*, 2017 UT 9, ¶ 63 (indicating that the risk of unfair prejudice may be mitigated if the evidence pertained to "a matter of substantial relevance to the prosecution"); *Alires*, 2000

UT App 244, ¶ 17 (noting that the prior bad acts evidence was not unfairly prejudicial in part because the defendant's "identity . . . is a necessary element of the charged offense" and "identity was a crucial issue at trial," rendering the evidence "very important to the State's case"). As a result, the challenged evidence does not seem to be of a kind likely to unfairly prejudice Whitbeck, given its role and purpose in the overall case.

¶33   In the balance, then, the court did not exceed its discretion in concluding that the probative value of the phone and wallet evidence was not substantially outweighed by the risk of unfair prejudice. It was the only physical evidence that corroborated Witness's account and that tended to show Whitbeck knew or believed the Acadia was stolen. Under these circumstances, it was not improper for the trial court to admit the phone and wallet evidence under Utah Rule of Evidence 404(b).

## II. The Photographs

¶34   Whitbeck also argues that trial counsel performed ineffectively by failing to object to the introduction of "irrelevant and highly prejudicial photographs." During the trial, the State presented two photographs it had obtained from Whitbeck's phone that showed him holding a gun. The State used these photographs to demonstrate that the recovered phone was, in fact, Whitbeck's. Defense counsel did not object to the admission of the photographs as exhibits. Whitbeck argues that counsel performed deficiently by not objecting because failing to do so could not have been a legitimate trial strategy where the photographs only tangentially connected him to the crimes with which he was charged. He suggests that, at the very least, counsel should have requested that the guns in the photographs be redacted. He also argues that had the photographs been excluded there is a reasonable probability the outcome at trial would have been more favorable to him.

¶35    To prevail on his ineffective assistance of counsel claim, Whitbeck bears the burden to demonstrate both that his trial counsel performed deficiently by failing to object to the photographs—i.e., "that counsel's representation fell below an objective standard of reasonableness," and that, had trial counsel objected, there is a "reasonable probability" that the outcome of the trial would have been more favorable to him. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶36    Here, we agree that trial counsel's failure to object to the introduction of the photographs is troubling. As Whitbeck points out, the photographs could have raised some risk that the jury might view him as a violent person and view his crimes, though nonviolent, through that lens. *See generally* Utah R. Evid. 403 (providing that evidence may be excluded if the probative value is "substantially outweighed" by "a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). Consequently, given the rather evident downside to the introduction of the photographs, we cannot easily conceive of "some plausible strategic explanation" for counsel's failure to, at the very least, request that the guns be redacted from them. *See State v. Carter*, 2015 UT App 109, ¶ 13, 349 P.3d 764 (quotation simplified).

¶37    However, we nonetheless conclude that Whitbeck has not shown that the introduction of the photographs was prejudicial to his overall case in that, without them, there was "a reasonable probability" he would have enjoyed a more favorable outcome at trial. *See Strickland*, 466 U.S. at 694. "*Strickland*'s requirement of a 'reasonable probability' of a different outcome is a relatively high hurdle to overcome." *State v. Garcia*, 2017 UT 53, ¶ 44 (quoting *Strickland*, 466 U.S. at 694). Only those errors that "actually had an adverse effect on the defense" require reversal. *See id.* ¶¶ 36–37. Thus, in analyzing prejudice under *Strickland*, we "consider the totality of the evidence" before the judge or

jury to determine whether the error "had a pervasive effect" on the evidence, "altering the entire evidentiary picture," or whether the error had only an "isolated, trivial effect." *Strickland*, 466 U.S. at 695–96. We also consider the strength of the evidence supporting the jury's verdict, as a "weakly supported" verdict "is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

¶38 Here, examining the record as a whole, we conclude that the admission of the photographs does not undermine our confidence in the jury's verdict. The evidence of Whitbeck's guilt overwhelmed any effect counsel's failure to object might have produced, rendering the photographs' overall impact on the case as a whole slight. *See Garcia*, 2017 UT 53, ¶¶ 42, 45. For example, the eluding the police charge was supported by the eyewitness accounts of Officer Huckaby and the responding patrol officer. Officer Huckaby testified that three days after the Acadia was stolen he observed Whitbeck driving a vehicle that matched the stolen Acadia's description, which prompted him to call for backup, and both Officer Huckaby and the responding patrol officer thereafter observed Whitbeck flee at high speeds once the patrol officer pulled behind Whitbeck and activated his lights and siren.

¶39 The theft by receiving the stolen Acadia charge was also supported by eyewitness identifications of persons who had observed Whitbeck in possession of the Acadia shortly after it was stolen. Witness testified that later on the morning of January 18, after he and Whitbeck had been separated while carrying out their plan to burglarize and steal vehicles in the North Ogden neighborhood, Whitbeck met back up with him and was driving a GMC Acadia. Officer Haney observed Whitbeck standing inside the driver's door of an Acadia parked on Witness's driveway two days after its theft, and Witness, who was with Whitbeck at the time, testified that Whitbeck then drove the vehicle away. Officer Huckaby, as discussed above, observed Whitbeck driving (and, later, fleeing) in the Acadia three days after the theft.

¶40　The State also introduced substantial evidence that Whitbeck would have known or believed that the Acadia had been stolen. Witness testified that he and Whitbeck were in the North Ogden neighborhood from which it was stolen on the night in question to carry out their plan of thieving and burglarizing vehicles and that they did, in fact, carry out that plan. Witness also testified, as discussed, that although he and Whitbeck became separated while carrying out their plan, he reunited with Whitbeck later in the morning of January 18, and at that time Whitbeck was driving an Acadia. The State introduced the phone and wallet evidence, which corroborated Witness's testimony about the plan to steal and burglarize vehicles. And both parties stipulated before trial that the Acadia was recovered by police from someone who claimed he received the Acadia from a person who Witness later testified was an associate of Whitbeck's, one who was "able to use" the stolen vehicles that were "around" "when he wanted to."

¶41　Thus, given all of the evidence before the jury, we cannot conclude that the introduction of the photographs—while troubling—prejudicially affected Whitbeck's case such that the outcome would have been more favorable to him without them. The evidence in the record that Whitbeck eluded the police and received the stolen Acadia overwhelms any potentially prejudicial effect counsel's failure to object might have produced. *See Garcia*, 2017 UT 53, ¶ 45. In other words, we are unpersuaded there is a reasonable probability that the jury would have acquitted him had counsel objected, or that the verdicts must have resulted from the jury's desire to improperly sanction him for holding a gun. *See Strickland v. Washington*, 466 U.S. 668, 695 (1984).

CONCLUSION

¶42　We conclude that Whitbeck has failed to demonstrate that the trial court erred by admitting the phone and wallet evidence under rule 404(b) of the Utah Rules of Evidence. We also

conclude that Whitbeck has failed to persuade us that he received constitutionally ineffective assistance of counsel when his trial counsel failed to object to the admission of the photographs recovered from his phone. Accordingly, we affirm.

_____